548 A.2d 1178
**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Steven DUFFEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1988.

Decided Oct. 14, 1988.

Thomas D. Brown, Charles Witaconis, Scranton, for appellant.

Ernest D. Preate, Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This appeal comes directly from the judgment of sentence imposed by the Court of Common Pleas of Lackawanna County.[1] Sentence of death was imposed after denial of appellant's post-verdict motions which were filed in re-

1. *See* 42 Pa.C.S. § 722(4).

sponse to a jury verdict of guilt on charges of first degree murder and robbery.

In the afternoon of February 17, 1984, the body of Kathy Kurmchak was found in the ladies restroom of Genetti's Manor, a restaurant located in Dickson City, Pennsylvania. The victim, then age 19, was a waitress at the restaurant. She was found slumped in the corner of the bathroom stall in a pool of blood; she had sustained approximately thirty stab wounds.

A subsequent police investigation revealed that a yellow Chrysler LeBaron was seen parked behind the restaurant that day. Routine questioning of all employees revealed that appellant, Steven Duffey, then an employee of Genetti's Manor, had stopped by the establishment that day to drop off a W-4 tax form. It was determined that appellant drove a yellow Chrysler LeBaron and the car behind the restaurant was identified as belonging to him.

Appellant was then asked to come to the state police barracks for further questioning. He was read his *Miranda* rights and he gave a statement corroborating an earlier statement that he had dropped off a W-4 form and returned home to watch television. He was informed of inconsistencies in his statement, such as the fact that his car was seen behind Genetti's Manor at the time that he claimed he was watching television. He was also informed that a search warrant was obtained for his car and that the police were looking for blood, clothing fibers, etc. Appellant then decided to make a more complete statement.

Appellant was again read his *Miranda* rights. He then recounted in great detail how he parked behind Genetti's Manor and proceeded into the restaurant. He found Kathy Kurmchak alone in the office. Appellant quietly entered the kitchen where he found a large butcher knife. Appellant slipped the knife into his pants and made his way back into the office.

He approached Kathy Kurmchak and demanded money. He obtained several dollars from the coat check tip jar and Ms. Kurmchak produced several more dollars from her

wallet. Appellant then said to the victim "come with me for a walk" and both proceeded to the ladies bathroom. Appellant told Ms. Kurmchak to walk over to one of the stalls, to open the stall door and to take off her pants. He then told Ms. Kurmchak that he wanted to have sex with her.

Kathy Kurmchak responded "no way" to appellant's suggestion. She then inquired, "what are you going to do, stab me?" Appellant took her watch from her wrist and stabbed Ms. Kurmchak. The victim grabbed the knife with her hands and said "don't, don't." Appellant stabbed her two or three more times and she started to slide down the wall of the bathroom stall. Appellant stabbed the victim five or six more times and the victim began to gasp. Appellant then stabbed her in the throat. Appellant exited the building. He buried the knife in the swamp behind the restaurant, got in his car, and drove home.

Appellant next gave a question and answer-type statement to the police. He recounted how he went to Genetti's Manor that morning to drop off his W-4 form. There were two women present at the time. He returned later to find that one woman had gone. He drove to the rear of the building and parked his car. He then went back into the restaurant to rob it because he thought the victim had the key to the safe.

Appellant went to the kitchen and found a knife. He walked to the office and stood by the door for about twenty minutes. The urge then came over him to "get it done." He proceeded into the office and demanded money from the victim. She gave him three one dollar bills and a handful of quarters from the tip jar, as well as four or five dollars from her purse.

Appellant again recounted how he marched the victim to the ladies bathroom. He told her to turn around. She refused and asked "what are you going to do, stab me?" He responded "yes, if I have to." He further stated, "give me your watch." He stuck the watch in his pocket and took the knife by the handle. He then demonstrated for the officer who was taking the statement, how he held the

knife, how the victim tried to grab it, and how he stuck it into her stomach.

Appellant recounted how the first stab wound was beneath the victim's breast. She looked at him and said "don't, don't." He stabbed her two or three more times and she beg
an to "creep" down the wall. She slid down and hit the flush on the toilet, and blood began to run out of her into the toilet. Appellant further stated: "I then stabbed her around the throat because she was gasping and trying to say something. After I stabbed her near the throat she slid down the rest of the way to the floor."

Appellant then stated "I stood there and felt her face and shirt to see if she was breathing. She was still breathing. I walked out [of] the stall by backing up. I looked back at her and her mouth was open like she was gasping for air. There was blood all over the place." The rest of appellant's statement detailed his actions after he left the crime scene.

## I. SUFFICIENCY OF THE EVIDENCE

It is the practice of this Court in all death penalty cases to conduct an independent review of the sufficiency of the evidence. *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987).

Murder is an unlawful killing of another with malice aforethought, expressed or implied. *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973). Appellant does not contest the fact that a killing occurred in this case; nor

does he contest that he was the actor who committed the killing. The only issue at trial was whether appellant possessed the requisite intent to satisfy the *mens rea* element of first degree murder.[2]

A jury may infer intent to kill from the use of a deadly weapon on a vital part of the body. *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398 (1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). In this case the evidence indicated that appellant inflicted approximately thirty stab wounds. This evidence, in addition to his confession wherein he stated, "I guess I'll have to kill you," and his graphic description and demonstration of how he carried out the killing, were sufficient for the jury to find intent. Therefore, appellant was properly convicted of first degree murder.

Appellant was also convicted of robbery. Any amount of force applied to a person while committing a theft brings that act within the scope of robbery under our statute.[3] This force may be actual or constructive. Actual

2. At trial there was no dispute as to appellant's identity as the perpetrator: appellant's confession was corroborated by witness testimony placing his car at the scene of the crime at the time of the murder; appellant produced the murder weapon which was consistent with the wounds inflicted upon the victim; he also produced the sneakers that he was wearing at the time of the crime, which were blood stained and matched the bloodied footprints which were found in the bathroom; and bloodstains matching the victim's blood were found on the seat of appellant's car.

3. 18 Pa.C.S. § 3701 provides in relevant part:
 (1) A person is guilty of robbery if, in the course of committing a theft, he:
 (i) inflicts serious bodily injury upon another;
 (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
 (iii) commits or threatens immediately to commit any felony of the first or second degree;
 (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or
 (v) physically takes or removes property from the person of another by force however slight.
 (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

force is applied to the body; constructive force is use of threatening words or gestures, and operates on the mind. *Commonwealth v. Brown,* 506 Pa. 169, 176, 484 A.2d 738, 741 (1984).

■ Appellant contends that the theft was completed prior to killing the victim, therefore no robbery occurred. The evidence establishes, however, that appellant went to Genetti's Manor that day with the intention of robbing the restaurant. He confessed to taking money from her at knifepoint. He then walked her to the ladies room, stole her watch, and stabbed her to death.

We believe that the Commonwealth has met its burden. Appellant's detailed confession, testimony that money was taken from Ms. Kurmchak, and the fact that appellant held the victim at knifepoint while taking her watch were sufficient for the jury to have convicted him of robbery.

## II. TRIAL ERRORS

Appellant contends that numerous trial errors were committed, thereby entitling him to a new trial. Appellant first alleges that the trial court erred by allowing into evidence pictures of the victim which prejudiced the jury. He contends that admission of the pictures was unnecessary in light of the fact that the victim's clothing, and a diagram of the victim's wounds were admitted into evidence. The pictures consisted of the following:

1) an 8" × 10" color photo showing the ladies bathroom at Genetti's Manor. Visible is one bloody shoe, and a blood-splattered floor and footprint;

2) a color photo of the bathroom stalls. The victim's leg is slightly visible in the lower right corner of the picture;

3) a color photo of the bathroom stall with two legs protruding. One foot is wearing a bloodstained shoe. Also, footprints are visible on the tile floor;

4) a color phot of a bloody footprint with a ruler next to it;

5) a color photo depicting the same scene described above;

6) a black and white post-mortem picture showing wounds of the wrist and forearm;

7) a black and white photo of the victim's bloodstained body lying in the stall;

8) a black and white post-mortem photo showing wounds of the abdomen and breast;

9) a black and white post-mortem photo cropped to show only wounds of the victim's forearm;

10) a black and white photo showing the bloodstained walls of the bathroom stall. A small amount of the victim's hair is visible; and

11) a black and white post-mortem shot showing wounds of the hands and fingers.

We have consistently held that the question of admissibility of photographs in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Woods*, 454 Pa. 250, 311 A.2d 582 (1973). The test for admitting such photographs is whether they are of such evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Petrakovich, supra,* 459 Pa. at 521, 329 A.2d at 849. *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968).

The pictures in this case were offered to prove the intent of appellant, and to help the jury understand the facts of the case. In assessing the intent of the actor in a case of criminal homicide, be it to inflict serious bodily injury or to kill, the fact-finder who deals with such an intangible inquiry must be aided to every extent possible. *Commonwealth v. McCutchen*, 499 Pa. 597, 454 A.2d 547 (1982). Pictures corroborate the Commonwealth's evidence that appellant intended to kill the victim. *See Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984). Fur-

thermore, if a photograph in a homicide case is not deemed to be inflammatory, it may be admitted so long as it is relevant and can assist the jury's understanding of the facts of the case before it. *Commonwealth v. Petrakovich, supra.*

In the present case, prior to admitting the pictures into evidence, the trial judge conducted an *in camera* hearing where he viewed all of the photographs the Commonwealth sought to admit. He made an independent determination as to the inflammatory impact and evidentiary value of each photo, and whether their need clearly outweighed the likelihood of inflaming the passions of the jurors. *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Miller,* 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). *See Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977).

The trial judge then admitted over appellant's objection the photos, as he felt they were proper and probative.[4] The photos admitted demonstrated how appellant attacked the victim, his proximity to her when the attack occurred, and the defensive wounds on the victim which indicated how she attempted to resist the attacks.

Furthermore, the trial judge cautioned the jurors that the pictures were offered to show the nature of the victim's wounds, and they should not let them stir their emotions or prejudice the appellant's case. The jury was allowed to view the photos for only a brief time, and did not take them to their deliberations. Upon these facts we conclude that the trial judge did not abuse his discretion in admitting the photographs.

4. Appellant cites *Commonwealth v. Garrison,* 459 Pa. 664, 331 A.2d 186 (1975), in support of his argument. *Garrison* is distinguishable, however. There the defense raised was insanity and the defendant had admitted the essential elements of the crime. Here the element of intent was not admitted but was the primary issue. Additionally, the pictures in *Garrison* were far more inflammatory containing, for instance, color pictures of the victim's head showing fragments of bone and brain tissue protruding from a gaping wound.

■ Appellant next contends that counsel for the Commonwealth improperly commented on his privilege against self incrimination, thereby prejudicing him. During closing arguments defense counsel contended that the evidence presented was not sufficient to support the crime of attempted rape. Counsel for the Commonwealth responded, stating that the testimony established that the victim was neat and presumably would not leave a button undone on her pants as she was found. He further stated that this testimony was uncontradicted.

We recognize that a prosecutor is not permitted to comment adversely upon a defendant's refusal to testify on the merits of the charge against him. Such comment by the prosecution violates the constitutionally based proscriptions against adverse comment on the refusal of the accused to take the stand. *Commonwealth v. Crawley*, 514 Pa. 539, 558, 526 A.2d 334, 344 (1987). However, we are also mindful that a prosecutor's remarks fall within the ambit of fair comment if they are supported by evidence and they contain inferences which are reasonably derived from that evidence. *Commonwealth v. Barren*, 501 Pa. 493, 462 A.2d 233 (1983). Our review of the record indicates that the prosecutor's remarks did not refer to appellant's refusal to take the stand in his defense; the prosecutor's statement was supported by the evidence; and it did not require appellant to rebut it. Additionally, we can conceive of no possible prejudice to appellant since he was not convicted of attempted rape.

Appellant's next allegation of error arises from the prosecutor's statements in his opening that he believed [the jurors] in *voir dire* when they stated that they could vote to convict if the evidence warranted it. Appellant contends that this was an improper remark.

■ The opening statement of the prosecution should be limited to a statement of the facts which he intends to prove, and the legitimate inferences deduced therefrom. *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975). However, even if remarks made during an opening

statement in a criminal proceeding are improper, relief will only be granted where the unavoidable effect is to prejudice the finders of fact as to render them incapable of objective judgment. *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976).

■ In this case, although the statements were not related to facts which the prosecutor intended to prove or inferences derived therefrom, they did not rise to prejudicial statements which rendered the jury incapable of objective judgment. Appellant's argument on this issue is therefore, without merit.

■ Appellant's next allegation of trial error centers on an emotional outburst by the mother of the victim. During the Commonwealth's opening statement, counsel remarked on how many times appellant stabbed the victim. Counsel then counted off the stabbings in sequence: one, two, three, etc. During this display, the victim's mother let out an audible scream and broke down in tears in front of the jury. She was escorted from the courtroom. The prosecutor continued his opening, at the end of which defense counsel motioned for a mistrial.

The trial judge gave a general cautionary instruction to the jury. He then polled each juror individually in chambers to determine whether they could disregard this outburst. Each juror indicated that they could disregard the outburst and render a fair and impartial verdict based solely on the evidence presented.

As we have previously stated a motion for a mistrial is addressed to the discretion of the court. It is primarily within the court's discretion to determine whether a defendant was prejudiced by the misconduct. *Commonwealth v. Gardner,* 490 Pa. 421, 416 A.2d 1007 (1980).

We have found other incidents of courtroom outbursts not to have been prejudicial.[5] In this instance the trial

5. *See Commonwealth v. Evans,* 465 Pa. 12, 348 A.2d 92 (1975), where the sister of decedent cried out while defendant was testifying; *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A.2d 302 (1972), where the

judge noted that "[this] interruption was brief, no recess was required, and the Commonwealth resumed its opening without difficulty. The action of the court in individually questioning the jurors, as well as instructing them on the subject of outbursts, was the proper procedure to employ in these circumstances. Furthermore, the court was convinced that the incident was of minimal impact and that the jury had been unswayed." [6]

Our review indicates that the trial judge took the proper steps to minimize the impact of this incident on the jury. Therefore, the trial judge did not abuse his discretion in denying appellant's motions for a mistrial.

■■■ Appellant next contends that the prosecutor in his opening improperly demonstrated the number of times that the victim had been stabbed by counting aloud the number of stab wounds inflicted. At the same time he allowed his voice to build to a crescendo to emphasize the stabbings. Appellant alleges that this display inflamed and prejudiced the minds of the jurors.

In *Commonwealth v. Jones*, 501 Pa. 162, 460 A.2d 739 (1983), we were faced with a situation where the prosecutor, in his closing argument picked up a gun identified as the murder weapon, pulled the trigger several times, pretended to reload the gun, and pulled the trigger again, all within close range of the jury. Although the issue was not preserved in *Jones* we noted that "not every impropriety on the part of the prosecutor warrants reversal. The trial judge, being in the best position to determine the appropriate remedy, will not be reversed except for an abuse of discretion." *Id.*, 501 Pa. at 166, 460 A.2d at 741; *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975).

brother of decedent stood up and shouted: "You murdered him. You are a bum" during defense counsel's closing argument; *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972), where a spectator-police officer burst out laughing during defense counsel's closing argument.

6. Opinion of the trial court on defendant's Motion for a New Trial and in Arrest of Judgment May 22, 1986, No. 84 Criminal 176, at 12.

In the instant situation, the prosecutor's remarks prompted the previously discussed outburst by the victim's mother. The trial judge stated that "while the district attorney may have been theatrical in his delivery, the resulting outburst ... was unpredictable." [7] Furthermore, the trial judge felt that the cautionary instruction and the individual questioning of each juror indicated that the jurors were not prejudiced or inflamed by the events. In our view the trial judge did not abuse his discretion in applying the above corrective measures, and there was no error in denying appellant's motion for a mistrial.

■ Appellant's next allegation of error centers on the prosecutor's statements in his opening to the effect that what a person says can be used to determine the intent of the person who made that statement. Defense counsel objected and moved for a mistrial on the basis that the prosecutor was improperly instructing the jury on the law. The trial judge denied appellant's motion.

It is obviously improper for counsel to misstate the law or to state it in a manner calculated to confuse the jury; however, it does not follow that counsel must refrain from any discussion whatsoever of applicable law. *Commonwealth v. Gwaltney*, 479 Pa. 88, 387 A.2d 848 (1978). The statements made by the prosecutor were not a misstatement of the law. Furthermore, the trial court cautioned the jury that the court was the sole authority on the law, and that they were to take the law from the court only. The trial judge properly denied appellant's motion for a mistrial.

Appellant next alleges that the trial court erred by admitting the testimony of Trooper Francis Zonin of the Pennsylvania State Police. This witness testified that he had been a crime scene investigator for the Pennsylvania State Police for seventeen years prior to this incident, and that he had investigated "hundreds" of stab wound cases. He further testified that he was able to detect "high speed splatter" of blood when a victim is stabbed in a frenzy; and that the absence of blood stains above a certain height on the

7. *Id.*

bathroom wall where the victim was stabbed indicated the absence of "high speed splatter." From this he concluded that the victim was stabbed in a slow and deliberate manner.

■■■■■ Appellant contends that the testimony of Trooper Zonin constituted expert testimony and as such was not properly admitted. Expert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill or occupation beyond the knowledge or experience of the average laymen. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Whether a witness is qualified as an expert is within the sound discretion of the trial court, and its ruling will not be overturned unless clear abuse occurs. *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978). However, the opinion of an expert witness may be excluded where no attempt has been made to qualify such witness as an expert in the disputed field. *Donaldson v. Maffucci*, 397 Pa. 548, 156 A.2d 835 (1959).

■■■ In this case Trooper Zonin was not listed as an expert going in to trial. Furthermore, the prosecutor did not properly qualify this witness, nor did he lay a foundation for his testimony. Clearly, his testimony as to the "high speed splatter" theory of blood constituted expert testimony. Therefore, since the evidence was properly objected to on this basis, the trial judge erred in allowing this testimony into evidence.[8]

■■■ Since this evidence was improperly admitted we must determine whether its admission constituted harmless error. The standard applied to determine whether an error is harmless is whether an appellate court is convinced beyond a reasonable doubt that the error is harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

8. Our discussion on this issue should not be construed as holding that such testimony is inadmissible *per se*. Assuming a proper foundation such testimony may be admissible in a given case.

An error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *Id.*, 476 Pa. at 417, 383 A.2d at 166; *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). Furthermore, in applying the overwhelming evidence test to determine if an error is harmless a court may rely only on uncontradicted evidence. *Commonwealth v. Story, supra*, 476 Pa. at 417, 383 A.2d at 166–67. *See also Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983).

Our review of the record indicates that uncontradicted evidence clearly establishes appellant's intent to kill the victim. First, his detailed statement graphically described how he carried out the murder. When asked why he murdered the victim, appellant replied that he did not want to go back to jail because he was terrorized of jail.

Evidence of appellant's intent was further corroborated by medical testimony as to the nature of the wounds; seventeen were incisional and thirteen were defensive, and medical testimony that the victim was alive while the wounds were inflicted. Pictures showing the victim's wounds also corroborated this evidence.

Furthermore, appellant led the investigating officer to the murder weapon stating: "you'll never find it if I don't show you." Also, testimony of a prison guard established that appellant was bragging to other inmates how he killed the victim. He proudly proclaimed that "it wasn't just a knife that he used, ... it's a god damn machete." He then demonstrated the size of the knife with his hands.

We are satisfied that the uncontradicted evidence establishes appellant's intent to kill the victim beyond a reasonable doubt; and admitting the opinion testimony of Trooper Zonin added nothing to the evidence already in the record. Therefore, it was harmless error.

█ Appellant next alleges that the trial court committed reversible error by admitting appellant's statement that he did not want to go back to jail and that he was terrorized of jail. Defense counsel objected on the basis that this was an improper reference to appellant's prior criminal activity. The trial judge overruled the objection and admitted the evidence with a limiting instruction that it was offered to show motive.

The law is clear in Pennsylvania that evidence of other unrelated criminal conduct of an accused is generally inadmissible to prove his commission of the crime for which he is being tried. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984); *Commonwealth v. Styles*, 494 Pa. 524, 431 A.2d 978 (1981). It is equally clear that evidence of other crimes is admissible where it is relevant to prove motive or intent. *Id.*, 494 Pa. at 525, 431 A.2d at 980; *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Martin, supra.* When evidence is admissible for a limited purpose a defendant is entitled to a limiting instruction. *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977). Therefore, the trial judge in this case properly admitted this evidence to show motive and properly instructed the jury on the purpose for which the evidence was offered.

### III. SENTENCING PHASE

█ Appellant next raises various challenges to the conduct of his penalty hearing. His first challenge is directed towards the admission into evidence, on the Commonwealth's motion, of mental health reports which had initially been compiled by appellant's attorney. The background facts of this challenge are set out below.

Appellant initially considered defending his actions by utilizing an insanity defense, and gave such notice to the Commonwealth as required by Pa.R.Crim.P. 305.C.(1)(b).[9]

9. Pa.R.Crim.P. 305.C provides in relevant part:

He thereupon provided reports of his experts as required by the rule.

Appellant ultimately abandoned the insanity defense. However, at his sentencing hearing he produced expert testimony to the effect that he was unable to understand the nature of his actions and he was unable to form the intent necessary to convict him of first degree murder. The Commonwealth then rebutted this testimony with the reports and testimony of appellant's own expert.

Appellant now argues that the bifurcated (guilt phase/penalty phase) death penalty procedure is unconstitutional, because it somehow deprives a defendant of his right to investigate an insanity defense. Appellant's argument proceeds along the following lines. He argues that if as here a defendant wishes to preserve an insanity defense he must comply with Pa.R.Crim.P. 305.C.(1)(b). If, however, he abandons this strategy he has supplied the Commonwealth with evidence which can be used against him at the penalty phase.

Appellant's argument might have some arguable basis if he was challenging the Commonwealth's decision to offer such evidence as part of its case in chief. In such an instance there might be some inherent unfairness. How-

(b) Notice of Insanity or Mental Infirmity Defense. A defendant who intends to offer at trial the defense of insanity, or a claim of mental infirmity, shall, at the time required for filing an omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific available information as to the nature and extent of the alleged insanity or claim of mental infirmity, the period of time which the defendant allegedly suffered from such insanity or mental infirmity, and the names and addresses of witnesses, expert or otherwise, whom the defendant intends to call at trial to establish such defense.
(c) Disclosure of Reciprocal Witnesses. Within seven (7) days after service of such notice of alibi defense or of insanity or claim of mental infirmity defense, or within such other time as allowed by the court upon cause shown, the attorney for the Commonwealth shall disclose to the defendant the names and addresses of all persons the Commonwealth intends to call as witnesses to disprove or discredit the defendant's claim of alibi or of insanity or mental infirmity.

ever, that is not the situation which occurred here. In this case appellant's counsel introduced evidence of appellant's mental capacity which contradicted the evidence of his previous doctors. He then sought to have this evidence presented to the jury in isolation, thereby making the evidence appear unrebutted. The Commonwealth, on the other hand, merely rebutted this evidence with information which appellant's counsel knew existed but sought to have shielded from the jury.

Since appellant opened the door to this line of inquiry the Commonwealth's use of an expert previously consulted by appellant was fair rebuttal, and we detect no constitutional violation.

■ Appellant next argues that Pennsylvania's death penalty statute is arbitrary and does not specifically set forth the procedure required at the sentencing hearing, in violation of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Specifically, he contends that the legislature did not indicate whether the Commonwealth could rebut evidence of mitigation and, if so, by what means and by what type of evidence. In addition, he argues that rebuttal evidence on the part of the Commonwealth is *per se* inadmissible.

The requirements of *Furman* are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of, or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition. *Commonwealth v. Zettlemoyer, supra,* 500 Pa. at 67, 454 A.2d at 964, quoting *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Pennsylvania's death penalty statute has previously been held to satisfy the requirements of *Furman. Commonwealth v. Cross,* 508 Pa. 322, 496 A.2d 1144 (1985); *Commonwealth v. Zettlemoyer, supra.* In the sentencing hearing the jury is asked to determine whether the aggravating circumstances outweigh the mitigating. In assisting the jury in its inquiry the parties are permitted to introduce

evidence "as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed." 42 Pa.C.S. § 9711(a)(2). Responsibility for the conduct of this evidentiary hearing rests with the presiding judge, and so long as the hearing comports with due process an appellate court should not interfere.

In this case appellant cites no authority which would indicate that the allowance of rebuttal testimony constitutes a *per se* violation, and we are aware of none. Indeed the necessity for the allowance of rebuttal testimony is evidenced by this case where defense counsel sought to present a wholly one-sided view of his client which he knew was not accurate. We should not encourage an evidentiary system which seeks to keep relevant evidence from the fact-finder. In summary, appellant's argument on this issue is totally lacking in merit.

Appellant next contends that the prosecutor made certain improper references at the penalty hearing. First, he contends that the prosecutor improperly referred to the fact that the victim pleaded for her life. The substance of his remark was as follows:

> [Prosecutor]: Now, you take all of the aggravating circumstances there, the killing and the killer. The person killed was 20 years old. What about her? What about her as she pleaded for her life?

The gist of appellant's argument is that these comments were not germane to the aggravating circumstance which the Commonwealth sought to prove: i.e., that the killing occurred while the defendant was perpetrating a felony, 42 Pa.C.S. § 9711(d)(6).

The Sentencing Code states in pertinent part: "after the presentation of evidence, the court shall permit counsel to present argument for or against the sentence of death ..." 42 Pa.C.S. § 9711(a)(3). Section 9711(a)(2) defines the scope of evidence which may be admitted in the penalty phase. In relevant part it says:

> evidence may be presented as to any matter that the court deems relevant and admissible on the question of

the sentence to be imposed and shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d)[10] and (e).[11]

42 Pa.C.S. § 9711(a)(2). By the terms of the statute the Commonwealth's evidence need not be limited to the aggravating circumstance sought to be proven. Therefore, since argument is permitted on all the evidence admitted, the Commonwealth's argument need not be limited to the aggravating circumstance which the Commonwealth seeks to prove. *See Commonwealth v. Travaglia, supra,* 502 Pa. at 503, 467 A.2d at 302 (1983) ("the prosecutor is permitted ... to argue in favor of the death penalty.").

■■ We note that the prosecutor's comments had a factual basis in the record, since appellant's own statements revealed her saying "don't, don't" as he stabbed her. Additionally, our review indicates that defense counsel interrupted the proceedings immediately after the statements were made, and although the objection was overruled, the prosecutor made no further reference to the comments and proceeded with the argument.

We are mindful that prejudice might arise from reference to the victim if such reference has the effect of arousing the jury's emotions to such a degree that it becomes impossible to impose a sentence based on relevant evidence according to the standards of the statute. However, the comments here were not of that character, and were no more than part of the prosecutor's general argument supporting his contention that the death penalty was appropriate for this crime. *See Travaglia, id.,* 502 Pa. at 503, 467 A.2d at 302 ("prosecutor's comments [were] no more than permissible 'oratorical flair' in argument in favor of the death penalty.").[12]

10. 42 Pa.C.S. § 9711(d).

11. 42 Pa.C.S. § 9711(e).

12. In *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), we found no error in the following Commonwealth argument.
 Right now, the score is John Lesko and Michael Travaglia two, society nothing. When will it stop? When is it going to stop? Who is going to make it stop? That's your duty.

■ Appellant next complains that the prosecutor exceeded the bounds of proper argument when he commented on his (appellant's) history of epilepsy. We find no merit to this argument since the prosecutor was merely commenting on evidence which the defendant himself introduced into the record. This evidence had been offered presumably to show that defendant's mental composition made it difficult for him to conform to societal rules. In response however the prosecutor pointed out that appellant's epileptic seizures occurred when he was a young boy, that they had not recurred, and that there were no demonstrable residual effects. This was certainly fair comment on the evidence, and we detect no prosecutorial misconduct in pursuing this line of argument. *See Commonwealth v. Barren,* 501 Pa. 493, 462 A.2d 233 (1983).

■ Appellant also contends that the prosecutor made an improper reference to his bathroom habits, thereby prejudicing him. To understand these comments they must be placed in the context in which they arose. It was defense counsel's theory that petitioner had a diminished ability (or no ability) to conform his conduct to the rules of society, and, therefore, the jury should find that a mitigating circumstance existed, specifically that found at 42 Pa.C.S. § 9711(e)(3). In partial response to this theory the prosecutor made the following remarks.

> When he [appellant] wants to obey the rules of the road, he can. He followed Trooper Carlson all the way through three towns, five miles. He drove on the right side of the road. That's conforming your conduct to the requirements of the law. He stopped at the stop signs.
>
> Another example of conforming: when he wanted to go to the bathroom, he didn't do it on the floor right in front of everybody. That's indecent exposure. No. Where did he go? He went like everybody else, down to the bathroom. That's conforming your conduct to the requirements of the law.

*Id.,* 502 Pa. at 502, 467 A.2d at 302.

These comments may have been indelicate or inartful but they were certainly not improper, nor were they such as would likely arouse a jury's emotions to such a degree as to render it incapable of acting dispassionately. We therefore find no merit to this argument.

Appellant next contends that the testimony of a prison guard at the Lackawana County Jail should not have been admitted into evidence. The guard testified that he heard appellant bragging to others about how he robbed Genetti's Manor and killed his victim with a "god damn machete." He then testified that appellant demonstrated the size of the knife with his hands.

Prior to admitting the testimony, the trial judge conducted a suppression hearing, but allowed the evidence in over defense objection. Appellant claims that the evidence was improperly admitted as it was a confession, and was not voluntarily given. We find no merit to this position.

The statements in question were not made in response to police interrogation, but were self-initiated boasts directed at other inmates. The fact that the statements were overheard does not make them involuntary.

Appellant next asserts that the evidence presented was not sufficient for the jury to have found an aggravating circumstance, i.e., appellant committed a killing while in the perpetration of a felony.[13]

The robbery in this instance was one continuous event beginning when appellant confronted the victim with a knife, stole money from the "tip jar" and the victim's wallet in the office of Genetti's Manor, marched the victim to the ladies room at knifepoint, stole her watch, and stabbed her to death. It ended when appellant left the restaurant. Certainly, sufficient evidence was presented that appellant killed the victim while the robbery was ongoing, and the aggravating circumstance was properly found.

13. We have already determined that the evidence was sufficient for the jury to have found each element of the crimes of first degree murder and robbery, beyond a reasonable doubt.

374

## IV. PROPORTIONALITY REVIEW

 Finally, it is the practice of this Court to conduct a proportionality review of each case in which the death penalty is imposed.[14] Our review focuses on whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases considering the circumstances of the crime and the character of the defendant. 42 Pa.C.S. § 9711(h)(3)(iii). The jury found one aggravating circumstance and no mitigating circumstances in this case.[15] Therefore, a death sentence was imposed.[16]

Our review indicates that where the aggravating circumstance found was that the killing was committed while in perpetration of a felony, and no mitigating circumstances were found, the death penalty has been imposed in the overwhelming majority of cases. *See, e.g., Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. DeHart, supra.*

The judgment of sentence of death entered by the Court of Common Pleas of Lackawana County is hereby affirmed.[17]

LARSEN, J., did not participate in the consideration or decision of this case.

**14.** This Court in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), ordered what is termed the "Pennsylvania Death Penalty Study". This study is an ongoing and comprehensive examination of all Pennsylvania cases where the defendant was convicted of first degree murder since the effective date of the death penalty statute.

**15.** The aggravating circumstance found by the jury according to 42 Pa.C.S. § 9711(d) was:

(6) The defendant committed a killing while in the perpetration of a felony.

**16.** 42 Pa.C.S. § 9711(c)(1)(iv) provides in relevant part:

[T]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and ... no mitigating circumstance.

**17.** The Prothonotary of the Eastern District is directed to transmit to the Governor as soon as possible, the full and complete record of all proceedings below and of review by this Court as required by 42 Pa.C.S. § 9711(i).