J-S35003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
KIRK J. MULLEN   :
  :
Appellant   :   No. 640 MDA 2022

Appeal from the Judgment of Sentence Entered November 8, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003052-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:       **FILED DECEMBER 13, 2022**

Appellant, Kirk J. Mullen, appeals from the aggregate judgment of sentence of 6 to 20 years' incarceration, imposed after he was convicted, following a non-jury trial, of various offenses, including robbery under 18 Pa.C.S. § 3701(a)(1)(ii) (threatens serious bodily injury). Appellant solely challenges the sufficiency of the evidence to sustain his robbery conviction. After careful review, we affirm.

Following a non-jury trial in October of 2021, Appellant was convicted of robbery, as well as criminal attempt to commit extortion (18 Pa.C.S. § 901(a) and 18 Pa.C.S. § 3923(a)(1)), terroristic threats (18 Pa.C.S. § 2706(a)(1)), and several drug-related offenses. Appellant was sentenced on

---

[*] Former Justice specially assigned to the Superior Court.

November 8, 2021, to the aggregate term set forth *supra*. He did not file a timely post-sentence motion.

On November 29, 2021, Appellant's counsel filed a motion to withdraw, which the court granted that same day. On December 1, 2021, new counsel entered his appearance on Appellant's behalf. The same day, new counsel filed a "Motion to File Post Sentence Motion *Nunc Pro Tunc*." On December 2, 2021, the court issued an order granting that motion, stating, "the Post-Sentence Motion shall be filed by [Appellant] within 30 days of the lodging of all necessary transcripts." Order, 12/2/21, at 1 (single page). The last transcript was lodged on January 3, 2022. Appellant filed his post-sentence motion on January 12, 2022. On April 6, 2022, the court issued an order denying Appellant's post-sentence motion. He filed a notice of appeal on April 27, 2022, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on May 27, 2022.

Herein, Appellant states one issue for our review: "Whether the Commonwealth failed to present sufficient evidence to establish a conviction for robbery where Appellant left a threatening letter but was not present when it was opened, and the nature of the threat was not such that it would have reasonably caused fear of immediate serious bodily injury." Appellant's Brief at 4.

Before addressing the merits of Appellant's issue, we must examine the timeliness of his appeal, which was filed beyond thirty days after the

imposition of his judgment of sentence. Pennsylvania Rule of Criminal Procedure 720(A) states:

> **(A) Timing.**
>
> (1) Except as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.
>
> (2) If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:
>
>> (a) within 30 days of the entry of the order deciding the motion;
>>
>> (b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion; or
>>
>> (c) within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion.
>
> (3) If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence, except as provided in paragraph (A)(4).

Pa.R.Crim.P. 720(a).

Here, Appellant did not file his post-sentence motion within 10 days of the imposition of his sentence. However, within 30 days of his judgment of sentence, Appellant requested that the court reinstate his right to file a post-sentence motion, and the court expressly granted that request. *See* ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128-29 (Pa. Super. 2003) (*en banc*) (stating that a post-sentence motion *nunc pro tunc* may toll the appeal period, if two conditions are met: first, within 30 days of imposition of sentence, the defendant must request the trial court to consider a post-

sentence motion *nunc pro tunc*, and second, the trial court must expressly permit the filing of a post-sentence motion *nunc pro tunc,* also within 30 days of imposition of sentence).  Problematically, however, the trial court directed Appellant to file his *nunc pro tunc*, post-sentence motion "within 30 days of the lodging of all necessary transcripts."  Order, 12/2/21, at 1 (single page).

We conclude that this aspect of the court's order violated the requirements of Rule 720.  In the Comment to Rule 720, it states: "In those cases in which a petitioner under the Post Conviction Relief Act has been granted leave to file a post-sentence motion or to appeal *nunc pro tunc*, the filing of the post-sentence motion or the notice of appeal **must comply with the timing requirements contained in paragraph (A) of this rule**."  Pa.R.Crim.P. 720 Cmt (emphasis added).  Additionally, Rule 720(B)(2)(c), titled "Briefs; Transcripts; Argument," discusses transcript preparation to ensure a timely disposition of the post-sentence motion, stating:

> (c) Transcript.  If the grounds asserted in the post-sentence motion do not require a transcript, neither the briefs nor hearing nor argument on the post-sentence motion shall be delayed for transcript preparation.

Pa.R.Crim.P. 720(B)(2)(c).  Noticeably absent from this provision is any mention of extending the time to **file** a post-sentence motion until **after** the transcripts have been lodged.

Instead, Rule 720(B)(2)(c) indicates that a defendant must file his post-sentence motion within 10 days of either the judgment of sentence or the reinstatement of his right to file such motion *nunc pro tunc*.  Afterwards, the

- 4 -

defendant may then seek an extension of time to file a brief to supplement that motion, or request a continuance for a hearing on the motion, until after the transcripts are filed.

Contrary to this rule, the trial court in the present case directed Appellant to wait until the transcripts were lodged **before** filing his post-sentence motion, rather than filing the motion within 10 days of its order reinstating his right to do so, and then requesting an extension to supplement his motion after the transcripts were lodged. This Court has held that the trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of an appellant's notice of appeal. **See Commonwealth v. Patterson**, 940 A.2d 493, 500 (Pa. Super. 2007). Thus, we conclude that the trial court's violation of Rule 720 excuses the untimeliness of Appellant's appeal.

We now move on to assessing Appellant's challenge to the sufficiency of the evidence to sustain his robbery conviction. To begin, we note our standard of review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno,** 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell,** 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

The trial court summarized the following facts, which were established

by the evidence presented at Appellant's non-jury trial:

> On September 11, 2020, at approximately 8:30 am, Dr. Patel, the owner/operator and pharmacy manager of the Medicine Shoppe, located in Shillington, Berks County, Pennsylvania, arrived to find an envelope taped to the front door of the business. The letter demanded that Dr. Patel drop off narcotics at a set location at a set time. The total amount of narcotics demanded were valued at $67,361.00. The demand letter further indicated that Dr. Patel was being watched. It made references to his wife, her occupation, his child, and the location of their home. The letter directed him not to contact the police or that people would get hurt. The letter then referenced an unsolved killing the previous summer, and claimed responsibility. In describing the circumstances of that killing, the letter highlighted that the victim had not been cooperative and the killing happened when his children were home. This reference was immediately followed by telling Dr. Patel that until Saturday[,] they would have eyes on his family and if he did not comply 'they' would 'get him' when he would least expect it within two years.

> After receiving the letter, Dr. Patel called the police but also immediately sent his wife, child, and parents to Harrisburg for the day.[7] Upon their return, he and his father remained at the residence while the family went to New Jersey for approximately two weeks. Dr. Patel decided that if the threat was real[,] … he would sell his pharmacy, along with another business, and move out of state.

> _____
> [7] Dr. Patel's parents resided with him.

> The police instructed Dr. Patel to prepare empty pill bottles in the manner demanded by the letter. Detectives Martinez and Santiago of the Berks County District Attorney's Office Detectives Unit went to the location designated in the letter with the package of purported narcotics. A surveillance video (no audio) of the interaction showed the detectives meet with a man, later determined to be [Appellant].[8] They gave the required code sentence, "Are you FedEx?" [Appellant] indicated that he was. The bag was given to [Appellant], who was then apprehended as

he walked away. In addition to the two detectives, there were Reading Police Vice officers and a state police helicopter air unit providing cover.

> [8] The surveillance video was admitted as Commonwealth [E]xhibit 7.

[Appellant] was questioned by police. During the course of questioning, after first indicating there were other participants still at large, [Appellant] ultimately admitted he was working alone and had placed the note on the door of the Medicine Shoppe for the purpose of having Dr. Patel deliver him narcotics to feed his addiction. He told police that he used a purple pen and black duct tape for the letter which could be found at his residence. Those items were recovered from his residence. [Appellant's] web history on his iPad9 (over the eight days prior to the incident) showed searches for things such as pharmacy robbery, robbery note at pharmacy, ["]what is the sentence for robbing a pharmacy with a note saying you have a gun (but you don't) no one hurt and everything returned[,"] … ["]are pharmacies a [*sic*] easy target for robbers,[" and "]how to rob pharmacy and not get caught[,"] as well as other similar searches.

Trial Court Opinion (TCO), 5/25/22, at 3-5 (some footnotes omitted).

Based on these facts, the court convicted Appellant of robbery under 18 Pa.C.S. § 3701(a)(1)(ii), which states: "A person is guilty of robbery if, in the course of committing a theft, he … threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" Our Court has explained that

> the Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury."

*Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000).

Here, Appellant contends that his robbery conviction under section 3701(a)(1)(ii) cannot be sustained because the Commonwealth failed to prove that he threatened **immediate** serious bodily injury to Dr. Patel. He explains:

> To establish robbery, the threat must put the victim in fear of immediate bodily injury. 18 Pa.C.S. § 3701(a)(1)(ii). The threat [Appellant] included in his letter was conditional. It informed [Dr.] Patel that if he provided [Appellant] with the drugs, no one would be hurt. While the letter warned that they had eyes on [Dr.] Patel's family, the letter also explicitly state[d,] "[i]f you do fuck us we aint gon [*sic*] get you right away, we wait till [*sic*] you least expect it like 2 years down the road." By [Appellant's] own words, the bodily injury that was threatened was not to take place for approximately two years, or at the very least not right away. The lack of jurisprudence on the subject begets the question, at what point is a threat of future harm no longer immediate? Commonsense and an application of the dictionary definition of "immediate" would dictate that the threat must be instant, not of harm to occur hours or years in the future. **See** *Black's Law Dictionary* (11th ed. 2019) ("immediate adj. 1. Occurring without delay; instant"). Such a threat properly fits the intention and wording for the crime of theft by extortion, but not robbery.

Appellant's Brief at 15.

The evidence presented at Appellant's trial belies his argument that he did not threaten immediate, serious bodily injury if Dr. Patel did not comply with his demands. In the letter Appellant wrote, he told the doctor that he "had eyes" on him, his wife, his family, and his house "right now." Commonwealth's Exhibit 2, 10/14/21, at 1. Appellant directed Dr. Patel to "keep this shit to yorselve [*sic*] and nobody will get hurt[,]" and threatened that if the doctor talked to anyone, he would get "clappd [*sic*] the fuck up." **Id.** Later in the letter, Appellant indicated that "clappd [*sic*] the fuck up" meant killed like another individual in a local, unsolved murder. **Id.** at 3-4.

Notably, Appellant told Dr. Patel that until he delivered the drugs at the designated time and place, Appellant would "have eyes on [his] family at all time[s]…." *Id.* at 4. He threatened that "lots of peoples [*sic*] lives [were in the doctor's] hands…." *Id.* At the close of the letter, Appellant reiterated that he and other people would have "eyes on [the doctor's] family all day today" to make sure the doctor did not "do anything stupid[.]" *Id.* at 5.

Given the content of Appellant's letter, we discern no error in the trial court's conclusion that the evidence was sufficient to demonstrate that he threatened Dr. Patel with immediate, serious bodily injury. As the court explained:

> It was reasonable for Dr. Patel to believe that he and his family were in danger of serious bodily injury. The fact that the note was not directly handed to Dr. Patel and was instead taped to the door of the pharmacy does not change the intent of [Appellant] or its intended effect on Dr. Patel. The contents of the note were carefully researched and chosen specifically to instill the fear of immediate and serious harm to Dr[.] Patel, and perhaps more effectively[,] harm to his family, with the goal of inducing him to provide the narcotics demanded without police interference. The nature of the threats, the inclusion of the specific details of Dr. Patel's family life, and the indication of continued surveillance of the Patels were crafted to create an untenable choice to provide the narcotics or suffer serious harm. The finder of fact has the right to weigh the testimony of each witness and determine which evidence it found credible. *Commonwealth v. Hughes*, 908 A.2d [924,] 928 (Pa. Super. 2006). Further, the [c]ourt was free to accept or reject the theories argued by the Commonwealth and the Defense in this case, as well as utilize common sense to determine if this was intentional conduct on behalf of [Appellant] as part of his theft scheme to place Dr. Patel in fear of immediate bodily injury when he left the note threatening harm to Dr. Patel and his family if he did not comply. This was bolstered by the indication in the letter that people were watching Dr. Patel.

> To sustain a conviction for robbery involving the threat of intentionally putting the victim in fear of immediate serious bodily injury, the proper focus is on the nature of the threat posed by the assailant and considering the defendant's intent and actions. *See Commonwealth v. Ouch*, 199 A.3d 918[, 924] (Pa. Super. 2018). Any use or show of force directed to a person while committing a theft, whether actual or constructive, brings that act within the scope of the [C]rimes [C]ode's robbery provision. *Commonwealth v. Duffey*, 548 A.2d 1178, 1182 (Pa. 1988). [Appellant] took extra steps to look up specific details about Dr. Patel's family and his residence, as well as an unsolved murder, and included those details in the letter to increase Dr. Patel's belief that failure to comply with the delivery would have direct consequences. The evidence in this case demonstrates aggressive actions that threatened the victim's safety. Threats to kill a victim support a conclusion by the fact finder that a defendant intentionally placed his victim in fear of immediate serious bodily injury. *Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa. 2006). When viewed in the light most favorable to the Commonwealth, there is sufficient evidence as to each element of robbery to support the verdict of guilty. Merely because [Appellant's] actions also supported a conviction for the Criminal Attempt to Commit Theft By Extortion charge does not mean that both offenses do not apply. [Appellant's] actions here were both a robbery and an attempted extortion.

TCO at 5-7.

We agree with the court. Appellant threatened immediate, serious bodily injury to Dr. Patel and his family if the doctor did not comply with the demands in Appellant's note. Appellant focuses his argument on the fact that he threatened ***future*** harm to the doctor if he did not bring Appellant the drugs on the stated day and time. However, Appellant ignores that he also told Dr. Patel that he was watching him and his family ***at that very moment***, and that he would continue to watch them until the day and time of the drug delivery. He then clearly threatened to kill Dr. Patel and/or his family if the doctor at any point told anyone about the note. Thus, we conclude that

Appellant threatened the doctor and his family with immediate, serious bodily injury during the course of committing the theft.  No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2022