713 A.2d 63

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Steven J. DUFFEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 27, 1997.

Decided May 21, 1998.

Reargument Denied Aug. 11, 1998.

Richard M. Bernstein, George S. Bobnak, Philadelphia, for S. Duffey, Appellant.

William P. O'Malley, Scranton, Robert A. Graci, Harrisburg, for the Com., Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

NEWMAN, Justice.

Appellant Steven J. Duffey (Duffey) has filed a direct appeal[1] from the Order of the Court of Common Pleas of Lackawanna County, entered December 2, 1996, which granted the Commonwealth's Motion to Strike Duffey's Amended Petition for Relief pursuant to the Post–Conviction Relief Act (PCRA).[2]

---

1. This Court has jurisdiction of appeals from the denial of PCRA relief in cases in which the death penalty has been imposed. 42 Pa.C.S. § 9546(d).

2. 42 Pa.C.S. § 9541 et seq.

## FACTS AND PROCEDURAL HISTORY

In this Court's Opinion affirming Duffey's judgment of sentence on direct appeal, Mr. Justice McDermott summarized the facts of this case as follows:

In the afternoon of February 17, 1984, the body of Kathy Kurmchak was found in the ladies restroom of Genetti's Manor, a restaurant located in Dickson City, Pennsylvania. The victim, then age 19, was a waitress at the restaurant. She was found slumped in the corner of the bathroom stall in a pool of blood; she had sustained approximately thirty stab wounds.

A subsequent police investigation revealed that a yellow Chrysler LeBaron was seen parked behind the restaurant that day. Routine questioning of all employees revealed that appellant, Steven Duffey, then an employee of Genetti's Manor, had stopped by the establishment that day to drop off a W–4 tax form. It was determined that appellant drove a yellow Chrysler LeBaron and the car behind the restaurant was identified as belonging to him.

Appellant was then asked to come to the state police barracks for further questioning. He was read his *Miranda* rights and he gave a statement corroborating an earlier statement that he had dropped off a W–4 form and returned home to watch television. He was informed of inconsistencies in his statement, such as the fact that his car was seen behind Genetti's Manor at the time that he claimed he was watching television. He was also informed that a search warrant was obtained for his car and that the police were looking for blood, clothing fibers, etc. Appellant then decided to make a more complete statement.

Appellant was again read his *Miranda* rights. He then recounted in great detail how he parked behind Genetti's Manor and proceeded into the restaurant. He found Kathy Kurmchak alone in the office. Appellant quietly entered the kitchen where he found a large butcher knife. Appellant slipped the knife into his pants and made his way back into the office.

He approached Kathy Kurmchak and demanded money. He obtained several dollars from the coat check tip jar and Ms. Kurmchak produced several more dollars from her wallet. Appellant then said to the victim "come with me for a walk" and both proceeded to the ladies bathroom. Appellant told Ms. Kurmchak to walk over to one of the stalls, to open the stall door and to take off her pants. He then told Ms. Kurmchak that he wanted to have sex with her.

Kathy Kurmchak responded "no way" to appellant's suggestion. She then inquired, "what are you going to do, stab me?" Appellant took her watch from her wrist and stabbed Ms. Kurmchak. The victim grabbed the knife with her hands and said "don't, don't." Appellant stabbed her two or three more times and she started to slide down the wall of the bathroom stall. Appellant stabbed the victim five or six more times and the victim began to gasp. Appellant then stabbed her in the throat. Appellant exited the building. He buried the knife in the swamp behind the restaurant, got in his car, and drove home.

Appellant next gave a question and answer-type statement to the police. He recounted how he went to Genetti's Manor that morning to drop off his W–4 form. There were two women present at the time. He returned later to find that one woman had gone. He drove to the rear of the building and parked his car. He then went back into the restaurant to rob it because he thought the victim had the key to the safe.

Appellant went to the kitchen and found a knife. He walked to the office and stood by the door for about twenty minutes. The urge then came over him to "get it done." He proceeded into the office and demanded money from the victim. She gave him three one dollar bills and a handful of quarters from the tip jar, as well as four or five dollars from her purse.

Appellant again recounted how he marched the victim to the ladies bathroom. He told her to turn around. She refused and asked "what are you going to do, stab me?" He responded "yes, if I have to." He further stated, "give me

your watch." He stuck the watch in his pocket and took the knife by the handle. He then demonstrated for the officer who was taking the statement, how he held the knife, how the victim tried to grab it, and how he stuck it into her stomach.

Appellant recounted how the first stab wound was beneath the victim's breast. She looked at him and said "don't, don't." He stabbed her two or three more times and she began to "creep" down the wall. She slid down and hit the flush on the toilet, and blood began to run out of her into the toilet. Appellant further stated: "I then stabbed her around the throat because she was gasping and trying to say something. After I stabbed her near the throat she slid down the rest of the way to the floor."

Appellant then stated "I stood there and felt her face and shirt to see if she was breathing. She was still breathing. I walked out [of] the stall by backing up. I looked back at her and her mouth was open like she was gasping for air. There was blood all over the place." The rest of appellant's statement detailed his actions after he left the crime scene.

*Commonwealth v. Duffey*, 519 Pa. 348, 354–356, 548 A.2d 1178, 1180–1181 (1988).

Following trial in the Court of Common Pleas of Lackawanna County before the Honorable James M. Munley, a jury convicted Duffey of first degree murder and robbery. After the penalty phase of the trial, the jury returned a sentence of death for the crime of first degree murder. After the denial of post-trial motions, Judge Munley formally imposed the sentence of death on August 4, 1986. This Court affirmed the judgment of sentence on October 14, 1988. *Id.*

No further legal action occurred in this case until September 22, 1994, when Governor Robert P. Casey signed a death warrant scheduling Duffey's execution for the week of December 4, 1994. The Pennsylvania Capital Case Resource Center (PCCRC) sent Judge Munley a letter dated November 15, 1994 that included the original and a courtesy copy of Duffey's "*Pro Se* Motion for Stay of Execution to Identify and Appoint

Counsel and to Permit Counsel Time to Prepare a PCRA Petition." The cover letter, signed by PCCRC staff attorney David Wycoff, stated the following:

Although the Pennsylvania Capital Case Resource Center is not representing Mr. Duffey in the PCRA proceedings he intends to file, the Resource Center is assisting Mr. Duffey in attempting to locate competent counsel and in presenting this motion for a stay of execution. As such please contact the Center . . . in regard to the return date of the motion, if you have any questions, or if we can assist the Court in any manner in regard to this matter.

Appellant's Brief, Appendix, p. 9a. The trial court denied the Motion on November 18, 1994, stating the following:

The defendant Duffey has not filed with the Court any Petition Under the Pennsylvania Post–Conviction Relief Act (PCRA) nor is there set forth in this motion any basis or reasons to establish that he is eligible for PCRA relief. Further, defendant Duffey has not had any matter pending before this Court or been involved with this Court since the year 1986, eight years ago.

For the reasons set forth above we find that this Court is without jurisdiction to entertain the defendant's motion and therefore the Motion to Stay Execution is DENIED.

Trial Court Memorandum and Order, November 18, 1994, p. 2.

Two days later, Duffey filed a Motion for Reconsideration that the trial court denied on November 22, 1994. The same day, Duffey filed a "Renewed Motion for Stay of Execution to Permit Counsel Time to Prepare PCRA Petition" (Renewed Motion) with a PCRA Petition attached. The Renewed Motion is a pleading that is unsigned, and the front page states that Duffey filed it *pro se.*

The question of whether the attached PCRA Petition was *pro se* or counseled is a significant issue in this case. The PCRA Petition is written on a six-page preprinted form that the Department of Corrections provides to inmates, titled "Motion for Post Conviction Collateral Relief" (Form DC–98). The form motion appears to be signed by Duffey, and includes

check marks in the boxes beside the following preprinted legal claims:

I AM ELIGIBLE FOR RELIEF BECAUSE OF:

(I)  A violation of the constitution of Pennsylvania or laws of this Commonwealth or the constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(II)  Ineffective assistance of counsel (trial & appeal) which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(V)  A violation of the provisions of the constitution, law, or treaties of the United States which would require the granting of federal habeas corpus relief to a state prisoner.

(VI)  The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(VII)  The imposition of a sentence greater than the lawful maximum.

Appellant's Appendix, p. 22a. To support any legal conclusions alleged in the motion, the form contains a section where an inmate can include any relevant factual allegations. Duffey's motion contains the following handwritten statement:

I have been incarcerated since my arrest in 1984. I am indigent, and have not had a lawyer to represent me in this matter since my conviction was affirmed by the Pennsylvania Supreme Court in 1988. Because of this, I have not been able to develop or investigate the facts in support of my legal claims, including my claim that my trial and appeal lawyers were ineffective. To fully support my claims, I must do an extra trial investigation, which I have been

unable to due [sic] due to my incarceration, indigency, and lack of counsel.

Appellant's Appendix, p. 23a.

On November 28, 1994, Duffey commenced Habeas Corpus proceedings in federal court.[3]  The trial court denied the Renewed Motion on November 29, 1994.  The trial court's motion does not expressly dispose of the PCRA petition attached to the motion, but Judge Munley's Opinion makes it clear that he found the attached PCRA petition to be "frivolous on its face and without merit."  Appellant's Appendix, p. 29a.

On December 5, 1994, this Court denied (1) Duffey's *pro se* Petition for Writ of Prohibition and Exercise of King's Bench Powers; (2) Emergency Motion for Stay of Execution; and (3) appeals from the Orders of the trial court denying stays of execution.[4]  While the matter was still pending in the federal

**3.**  Duffey filed a "Motion to Proceed in Forma Pauperis, for a Stay of Execution and for Appointment of Federal Habeas Corpus Counsel pursuant to 28 U.S.C. § 2251 and 21 U.S.C. § 848(q)—and Complaint for Injunctive Relief pursuant to 42 U.S.C. § 1983" in the United States District Court for the Middle District of Pennsylvania (District Court) on November 28, 1994.  The District Court reserved ruling on the Motion pending this Court's disposition of his request for a stay to pursue state remedies.

**4.**  The same day, the District Court issued a Memorandum Opinion and Order allowing Duffey to proceed in forma pauperis, and granting his request for appointment of federal habeas corpus counsel.  It issued a temporary stay of execution, but following a hearing, it denied the request for a stay and vacated the temporary stay it entered on December 5, 1994.

Duffey then filed an appeal to the United States Court of Appeals for the Third Circuit (Court of Appeals), which granted a temporary stay of execution.  A three-judge panel of the Court of Appeals heard oral argument on October 26, 1995, and on January 16, 1996, it filed an Opinion and Order reversing the District Court.  The Court of Appeals issued an Order on February 12, 1996, which granted the Commonwealth's request for reargument before the court *en banc* and vacated the panel's Opinion and Order.

Prior to argument before the Court of Appeals *en banc*, Duffey filed a motion to dismiss the appeal as moot because the District Court's appointment of counsel to represent him changed the procedural posture of the case pursuant to applicable federal law.  He also asserted that the appeal was moot because the death warrant issued for the week of December 4, 1994 had expired.  The Court of Appeals heard oral

courts, Duffey filed an Amended Petition for PCRA Relief in the Court of Common Pleas of Lackawanna County on April 27, 1995.

After the federal litigation ended, the Commonwealth filed a Motion to Strike the Amended PCRA Petition on August 21, 1996, asserting that Duffey could not file an Amended PCRA Petition because the trial court had previously denied Duffey's PCRA Petition on November 22, 1994. The Commonwealth maintained that the appropriate procedure for post-conviction relief would be a petition for leave of court to file a second PCRA Petition. On December 2, 1996, the trial court issued an Opinion and Order granting the Motion to Strike. Duffey now appeals that Order to this Court.

## ISSUES

Duffey raises the following issues in this appeal:

1. Was Duffey's first PCRA petition "counseled"?
2. If a defendant sentenced to death files a *pro se* PCRA petition, is he or she entitled to court-appointed counsel to file an amended petition?
3. Did the trial court rule on the merits of the first PCRA petition?
4. If the trial court ruled on the merits of the PCRA petition, did it comply with the requirements of Pa.R.Crim.P. 1507, which governs the dismissal of PCRA petitions without an evidentiary hearing?

## DISCUSSION

### I.

Duffey first argues that his first PCRA petition was *pro se* and uncounselled, and that the trial court erred when it denied his first PCRA petition, which was attached to the Renewed Motion, without appointing counsel to represent him. Rule 302 of the Pennsylvania Rules of Criminal Procedure governs

argument and agreed with Duffey. Accordingly it issued an Opinion and Order on May 22, 1996 that dismissed the appeal and vacated the District Court's Order denying the stay of execution.

attorney appearances and withdrawals and provides as follows:

RULE 302. ATTORNEYS—APPEARANCES AND WITHDRAWALS

(a) Counsel for defendant shall enter an appearance in writing with the clerk of courts promptly after being retained or appointed and serve a copy thereof on the attorney for the Commonwealth. If a firm name is entered, the name of an individual lawyer shall be designated as being responsible for the conduct of the case.

Counsel shall not be permitted to represent a defendant following a preliminary hearing unless an appearance is entered.

(b) Counsel for a defendant may not withdraw his or her appearance except by leave of court. Such leave shall be granted only upon motion made and served on the attorney for the Commonwealth and the client, unless the interests of justice otherwise require.

Pa.R.Crim.P. 302. The record clearly shows that no attorney entered an appearance pursuant to Rule 302. The trial court apparently relied on the fact that attorneys from the PCCRC were assisting Duffey in preparing his *pro se* petition, when it stated the following:

We are also not convinced by defendant's contention that the first P.C.R.A. Petition was uncounselled. The record clearly indicates that the defendant was being aided by various attorneys from the [PCCRC] in filing the P.C.R.A. Petition and the motions for stay of execution.

Trial Court Opinion, December 2, 1996, p. 5. While it may be true that the PCCRC was involved in this case when Duffey filed the PCRA Petition, that involvement does not rise to the level of actual representation of Duffey because no attorney from that organization entered an appearance on the record. Indeed, the PCRA Petition stated that Duffey was unrepresented and without resources to obtain a lawyer. It further stated that Duffey had asked the PCCRC to assist him in obtaining qualified counsel and requested the court to appoint

counsel if the PCCRC could not obtain qualified counsel to represent him.

██ Our review of the record reveals that PCCRC was attempting to help Duffey in obtaining counsel, and in the meantime assisted him in preparing *pro se* pleadings for post-conviction relief and to obtain a stay of his execution. The record demonstrates that no attorney entered an appearance on behalf of Duffey, and that Duffey apparently signed the PCRA petition himself. It is true that Attorney Wycoff sent a letter to the trial court on Duffey's behalf, but writing a letter for an unrepresented inmate falls far short of entering an appearance in the record pursuant to Rule 302. Accordingly, we have no difficulty concluding that Duffey's first PCRA petition was filed *pro se.*

The Commonwealth maintains that Duffey's *pro se* status is a "fiction" because the PCCRC filed a Notice of Appeal from the trial court's Order of November 18, 1994 that denied Duffey's Motion for a Stay of Execution. The Notice of Appeal filed on November 30, 1994, is signed by Yvonne R. Bradley, and the text beneath the signature line states the following:

Prepared by: Yvonne R. Bradley, Esq.

(for Steven Duffey, *pro se* )

Pennsylvania Capital Case Resource Center

437 Chestnut Street, Suite 501

Philadelphia, PA 19106

(215) 451–6500.

Appellee's Reproduced Record, p. 3. Attorneys from the PCCRC also filed a Notice of Appeal from the trial court's Order dated November 29, 1994. This notice was filed on December 1, 1994, is signed by PCCRC attorney David Wycoff, and contains similar language purporting to be a *pro se* filing by Duffey.[5]

---

**5.** Another Notice of Appeal from an Order dated November 28, 1994 was also filed and signed by PCCRC attorney Bradley and purported to be a *pro se* filing by Duffey. This Notice of Appeal does not appear to be related to any Order entered into the docket in this case.

■ We agree with the Commonwealth that the *"pro se"* designations on these Notices of Appeal were meaningless. Rule 9020 of the Pennsylvania Rules of Criminal Procedure sets forth the requirements for written motions and provides in pertinent part as follows:

RULE 9020. MOTIONS

(a) All motions, challenges, and applications or requests for an order or relief shall be made by written motion, except as otherwise provided in these rules, or as permitted by the court, or when made in open court during a trial or hearing.

(b) A written motion shall comply with the following requirements:

   (1) *The motion shall be signed by the person or attorney making the motion.* The signature of an attorney shall constitute a certification that the attorney has read the motion, that to the best of the attorney's knowledge, information, and belief there is good ground to support the motion, and that it is not interposed for delay.

. . . .

Pa.R.Crim.P. 9020 (emphasis added). Nothing in Rule 9020 permits an attorney to sign pleadings for *pro se* defendants. To the contrary, an attorney's signature is a legal certification that gives good cause to support the pleading, and an attorney cannot avoid that certification through the addition of creative language describing the attorney as a mere "preparer" on behalf of a *pro se* defendant. Thus, when an attorney signs and files a pleading for an unrepresented defendant, that attorney will be deemed to represent that defendant. We do not condone counsel's attempts to file a notice of appeal without entering an appearance in this case. The attorneys from PCCRC who signed those notices of appeal became Duffey's attorneys of record for the appeal when they filed them on November 30, 1994.

Nevertheless, this does not affect the fact that Duffey was still unrepresented when the trial court denied the Renewed

Motion on November 29, 1994. Accordingly, we conclude that the trial court committed an error of law when it held that Duffey's first PCRA Petition was "counseled" and not *pro se.*

## II.

Having concluded that the trial court erred in holding that Duffey was represented by counsel when he filed the PCRA Petition, we must next consider Duffey's assertion that the trial court erred when it denied the PCRA petition without appointing counsel to represent him. Rule 1504(a) of the Pennsylvania Rules of Criminal Procedure governs the appointment of counsel in PCRA proceedings and provides as follows:

RULE 1504. APPOINTMENT OF COUNSEL; FORMA PAUPERIS

(a) When an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, *the judge shall appoint counsel* to represent the defendant on the defendant's first motion for post-conviction collateral relief.

(b) On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 1508, the judge shall appoint counsel to represent the defendant.

(c) The judge shall appoint counsel to represent a defendant whenever the interests of justice require it.

(d) An appointment of counsel shall be effective throughout the post-conviction proceedings, including any appeal from disposition of the petition for post-conviction collateral relief.

(e) When a defendant satisfies the judge that the defendant is unable to pay the costs of the post-conviction collateral proceedings, the judge shall order that the defendant be permitted to proceed in forma pauperis.

Pa.R.Crim.P. 1504, (emphasis added). In *Commonwealth v. Albert,* 522 Pa. 331, 561 A.2d 736 (1989), this Court reiterated

the entitlement to counsel in first PCRA proceedings when we stated the following:

> At the outset, we note that in this Commonwealth one who is indigent is entitled to the appointment of counsel to assist with an initial collateral attack after judgment of sentence.

*Id.* at 334, 561 A.2d at 738.

■ Here, the trial court did not appoint counsel to represent Duffey in accordance with Rule 1504. Instead, it denied the *pro se* PCRA Petition without appointing counsel and then granted the Commonwealth's Motion to Strike the Amended PCRA Petition filed by counsel because the court had already ruled on the merits of the *pro se* PCRA Petition. The trial court erred when it declined to appoint counsel to assist Duffey with the first PCRA Petition, and the court should have permitted Duffey to litigate the Amended PCRA Petition with the assistance of counsel. Accordingly, we hold that the trial court committed an error of law when it granted the motion to strike the Amended PCRA Petition. We must therefore remand this case to the trial court to consider Duffey's Amended PCRA Petition.

## CONCLUSION

Based on the foregoing, we hold that the trial court erred when it denied the *pro se* PCRA Petition without appointing counsel to represent Duffey. The trial court also erred when it granted the Commonwealth's Motion to Strike the Amended PCRA Petition.[6] Accordingly, we remand this matter to the trial court for consideration of the Amended PCRA Petition.

---

6. Duffey also asks this Court to hold that the trial court did not address the merits of the *pro se* PCRA Petition. Because we have determined that a remand is necessary to allow Duffey to litigate the Amended PCRA petition, we will not consider this issue.

In addition, we will not address the consequences of the trial court's failure to comply with the notice requirement of Pa.R.Crim.P. 1507, which requires the court to give a defendant notice of its intent to dismiss a PCRA Petition without a hearing, and allows the defendant ten days to respond before the dismissal.