722 A.2d 676

In re SUSPENSION OF the CAPITAL UNITARY REVIEW ACT and Related Sections of Act No. 1995–32(SS1); and Amendment of Chapter 1500 of the Rules of Criminal Procedure.

No. 110 W.D. Misc. Dkt. 1997.

Supreme Court of Pennsylvania.

Jan. 19, 1999.

### ORDER

PER CURIAM:

AND NOW, this 19th day of January, 1999, the Petition for Reconsideration is DENIED.

## OPINION IN SUPPORT OF ORDER DENYING RECONSIDERATION

CASTILLE, Justice.

Petitioner, the Attorney General, has filed a Petition for Reconsideration of this Court's decision to suspend the Capital Unitary Review Act, 42 Pa.C.S. §§ 9570–9579 (hereinafter "CURA"), on August 11, 1997. Having carefully considered the briefs filed by all parties who have asserted an interest in this matter, this Court remains determined that the initial decision to suspend CURA was correct for the reasons set forth herein.

At the outset, it is important to emphasize the obvious—that this Court always accords great weight to the pronouncements

of the Legislature, as it should. It is a moment of grave significance when we are constrained to nullify duly enacted statutes. But this Court must do as it is required to do when legislation not only encroaches into the procedural domain of the judicial system, but also conflicts with pre-existing procedural rules duly promulgated by this Court, as is the case here. Article V, Section 10 of the Pennsylvania Constitution provides as follows:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require ... and the administration of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. *All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.*

Pa. Const. Art. V, Sec. 10 (emphasis added). The emphasized language imposes an affirmative obligation on this Court to suspend any statute which is inconsistent with pre-existing procedural rules promulgated by this Court. Accordingly, on August 11, 1997, this Court properly fulfilled its Constitutional obligation under Article V, Section 10 by suspending the statutory provisions which embodied CURA. In order to understand why this Court was compelled to so act, it is instructive first to understand what CURA purported to do.

CURA did not create any new substantive right, nor did it eliminate any pre-existing substantive right. Instead, CURA purported to prescribe, with specificity, a detailed *procedure* by which courts were to administer capital cases, from the time the sentence of death was imposed by the jury until the time of its implementation. The most dramatic change which CURA purported to effectuate was the implementation of a

bifurcated, but simultaneous, post-trial review process at the trial court level for both post-sentence motions and collateral appeal. 42 Pa.C.S. § 9571(c)(suspended by this Court's Order of August 11, 1997). CURA provided that a judgment becomes final for purposes of appeal only after the trial court's disposition of the petition for collateral relief, and also specified that no direct appeal may take place until after the trial court has decided both the post-sentence motions and the collateral relief petition. 42 Pa.C.S. § 9571(b) (suspended by Order of August 11, 1997). CURA further specified that the direct appeal and collateral appeal were to occur simultaneously in one appellate proceeding. 42 Pa.C.S. § 9577(a)(suspended by Order of August 11, 1997). CURA also implemented a variety of other procedural changes—some incidental to those detailed above and some independent of them— but it will suffice to discuss the manner in which the major provisions of simultaneous review, detailed above, were inconsistent with this Court's pre-existing procedural rules.

First, the procedures prescribed by CURA were inconsistent with Pa.R.A.P.1941, promulgated by this Court, which describes the manner in which capital cases are to proceed upon direct appeal. Rule 1941 provides as follows

(a) **Procedure in Trial Court.** Upon the entry of a sentence subject to 42 Pa.C.S. § 9711(h)(review of death sentence) the court shall direct the official court reporter and the clerk to proceed under this chapter as if a notice of appeal had been filed 20 days after the date of entry of the sentence of death, and the clerk shall immediately give written notice of the entry of the sentence to the Administrative Office and to the Supreme Court Prothonotary's Office. The clerk shall insert at the head of the list of documents required by Rule 1931(c)(duty of clerk to transmit the record) a statement to the effect that the papers are transmitted under this rule from a sentence of death.

(b) **Filing and Docketing in the Supreme Court.** Upon receipt by the Prothonotary of the Supreme Court of the record of a matter subject to this rule, the Prothonotary shall immediately

(1) Enter the matter upon the docket as an appeal, with the defendant indicated as the appellant and the Commonwealth indicated as the appellee.

(2) File the record in the Supreme Court.

(3) Give written notice of the docket number assignment in person or by first-class mail to the clerk of the lower court.

(4) Give notice to all parties and the Administrative Office of the docket number assignment and the date on which the record was filed in the Supreme Court, and shall give notice to all parties of the date, if any, specifically fixed by the Prothonotary pursuant to Rule 2185(b)(notice of deferred briefing schedule) for the filing of the brief of the appellant.

(c) **Further Proceedings.** Except as required by Rule 2189 or by statute, a matter subject to this rule shall proceed after docketing in the same manner as other appeals in the Supreme Court.

Thus, Rule 1941 provides for the automatic perfection of direct appeals of death sentences to the Supreme Court subsequent to the entry of the judgment of sentence, contrary to the aforementioned conflicting provisions of CURA which would have required the trial court to rule on a collateral review petition before any direct appeal could be perfected to the Supreme Court.

In addition to being inconsistent with this Court's procedural rules governing the direct appeal process, CURA was also inconsistent with the procedural rules promulgated by this Court to govern the collateral appeal process. At the time of the adoption of CURA, Pa.R.Crim.P. 1501 provided as follows:

A proceeding for post-conviction collateral relief shall be initiated by filing a motion and three copies with the clerk of the court in which the defendant was convicted and sentenced. The motion shall be verified by the defendant.

Pa.R.Crim.P. 1501 (amended August 11, 1997). The comment to Rule 1501 provided in relevant part:

... [T]he chapter 1500 Rules are intended to require that, in a single proceeding, the defendant must raise and the judge must dispose of all grounds for relief available *after*

> conviction and exhaustion of the appellate process, either by affirmance or by the failure to take a timely appeal.

(emphasis in original)(amended August 11, 1997). Thus, prior to the enactment of CURA, this Court had promulgated rules mandating that all post-conviction collateral review take place *subsequent* to exhaustion of the direct review process. CURA purported to directly contravene those rules. Since CURA directly conflicted with this Court's pre-existing procedural rules governing both the direct and collateral appellate processes, this Court could not inquire at all into the wisdom of CURA as a policy matter. Instead, once this Court ascertained CURA's inconsistency with its existing procedural rules, this Court was duty-bound to suspend CURA pursuant to the mandate embodied in Article V, Section 10 of our Constitution.

Petitioner, the Attorney General, initially agrees that this Court may suspend laws "to the extent that they are inconsistent with rules prescribed under [Article V, Section 10]." Nevertheless, petitioner asserts that CURA is not inconsistent with any existing Court-promulgated rules since CURA prescribes a mechanism for "preappeal collateral review," whereas the only mechanism presently promulgated by this Court is concerned with "postappeal" collateral review. However, the legislature cannot tautologically dissolve the palpable conflict between CURA and this Court's rules simply by dubbing CURA "preappeal collateral review." Indeed, the very crux of the inconsistency is that CURA purported to turn the exclusive process for obtaining collateral review in capital cases into a "preappeal" process, whereas the exclusive process embodied in this Court's rules was, and is, a "postappeal" process. Under CURA, many of this Court's procedural rules establishing a detailed "postappeal" process for collateral review would have been rendered wholly inoperative. This seems as clear a procedural conflict with this Court's rules as is imaginable. While this Court does not question the good faith and laudable motives of either the legislature or those who seek to reinstate CURA, this Court cannot turn its back on a duty so clearly

enshrined in our Constitution—the duty to suspend laws which conflict with our own procedural rules.

The driving force behind the enactment of CURA was undoubtedly the inordinate delay that has existed in the past between the imposition of the sentence of death by the jury and the carrying out of the death penalty. Indeed, under the former provisions of the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541 *et seq.* ("PCRA"), there was undue delay in this area, even in cases where the defendant chose not to seek collateral review. *See, e.g., Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982)(execution occurring nine years after final resolution of collateral appeal); *Commonwealth v. Moser,* 519 Pa. 441, 549 A.2d 76 (1988)(execution occurring over seven years after final direct appeal resolved, even when no collateral review was sought). However, an examination of the historical record will reveal that the existing direct review and collateral review procedures were not the source of the undue delay in these cases. Instead, the source of the inordinate delay was the lack of a mandatory procedure for the issuance of death warrants by the Governor prior to the 1995 amendments to the PCRA. For example, in *Morganelli v. Casey,* 166 Pa. Commw. 574, 646 A.2d 744 (1994), the reluctance of the Governor of the Commonwealth in declining to issue death warrants pursuant to this Court's affirmance of two death sentences on direct appeal resulted in the issuance of a writ of mandamus by the Commonwealth Court to direct the Governor to fulfill his statutory mandate and timely issue the appropriate warrants. In response to this situation, the legislature enacted 42 Pa.C.S. § 9711(j) in 1995 as part of a series of amendments to the PCRA. The relevant section provides as follows:

**Issuance of warrant.—**

(1) After the receipt of the record [which must be transmitted to the Governor within 90 days after the affirmance of the death sentence by the Supreme Court on direct appeal], unless a pardon or commutation has been issued, the Governor *shall,* within 90 days, issue a warrant specifying a week for execution which *shall* be no

later than 30 days after the date the warrant is signed .... (emphasis added).

Previously, there was no specific requirement for the Governor to sign a death warrant following completion of either direct review or collateral review. Without a death warrant in effect, there was no incentive for a capital prisoner to seek collateral relief. Therefore, collateral review was rarely sought. Furthermore, even when a death warrant was finally issued pursuant to the exhaustion of the appellate process on direct review, there were no concrete time limits in effect for the filing of collateral petitions.[1] Accordingly, the collateral review process was indefinitely postponed in almost every capital case prior to the enactment of the 1995 amendments.

The combination of Sections 9711(j) and 9545(b) should effectively eliminate inordinate periods of delay in the appellate process. Under these sections, capital prisoners may no longer idly sit by as they could previously, secure in the knowledge that they need not seek collateral relief unless and until the Governor exercises a wholly indeterminate duty to issue a death warrant. Similarly, no longer can capital prisoners be secure in the knowledge that if a Governor were to issue a death warrant, they would again be able to delay indefinitely the filing of their petition for collateral relief, for to do so would be to lose the right to file such a petition. The mandates of these two sections will achieve the underlying aims of CURA—namely, the elimination of the inordinate periods of delay formerly inherent in both the direct and collateral appellate review processes, thereby allowing the processes to advance in an orderly fashion.[2]

1. In 1995, the legislature rectified this situation by enacting 42 Pa.C.S. § 9545(b), which provided for a one-year time limit after the date of final judgment for the filing of a collateral petition under the PCRA. Neither section 9545(b) nor section 9711(j) poses a problem under Article V, Section 10, since neither enactment conflicts with a pre-existing procedural rule of this Court.

2. Indeed, since section 9711(j) became operative on March 15, 1995, this Court has issued 31 opinions bringing final resolution to petitions for collateral relief under the PCRA in capital cases. *See Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638 (1998); *Commonwealth v. Kindler*, 554 Pa. 513, 722 A.2d 143 (Dec. 11, 1998); *Commonwealth v.*

In summation, this Court believes that CURA violated the express mandate of Article V, Section 10 of the Pennsylvania Constitution by directly conflicting with existing procedural rules duly promulgated by this Court. Consequently, this Court was constrained to suspend CURA. We do not trifle lightly with the means chosen by the legislature to effectuate its desired end; accordingly, CURA was suspended only with great reluctance. Notwithstanding the suspension of CURA, the end desired by the legislature—an expeditious process of

*Rompilla*, 554 Pa. 378, 721 A.2d 786 (Dec. 10, 1998); *Commonwealth v. Abu-Jamal*, 553 Pa. 485, 720 A.2d 79 (1998); *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242 (Oct. 5, 1998); *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233 (Oct. 1, 1998); *Commonwealth v. Taylor*, 553 Pa. 144, 718 A.2d 743 (Aug. 20, 1998); *Commonwealth v. Crews*, 552 Pa. 659, 717 A.2d 487 (Aug. 20, 1998); *In re Gary M. Heidnik*, 554 Pa. 177, 720 A.2d 1016 (Aug. 19, 1998); *Commonwealth v. Michael*, 552 Pa. 40, 713 A.2d 96 (July 9, 1998); *Commonwealth v. Duffey*, 551 Pa. 675, 713 A.2d 63 (May 21, 1998); *Commonwealth v. Lesko*, 553 Pa. 233, 719 A.2d 217 (May 21, 1998); *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471 (Feb. 26, 1998); *Commonwealth v. Jermyn*, 551 Pa. 96, 709 A.2d 849 (Feb. 25, 1998); *Commonwealth v. Porter*, 550 Pa. 243, 704 A.2d 1379 (Feb. 20, 1998); *Commonwealth v. Henry*, 550 Pa. 346, 706 A.2d 313 (Dec. 23, 1997); *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541 (Oct. 1, 1997); *Commonwealth v. Morales a/k/a Pirela*, 549 Pa. 400, 701 A.2d 516 (Sept. 17, 1997); *Commonwealth v. Fahy*, 549 Pa. 159, 700 A.2d 1256 (Sept. 17, 1997); *Commonwealth v. Lark*, 548 Pa. 441, 698 A.2d 43 (July 23, 1997); *Commonwealth v. Szuchon*, 548 Pa. 37, 693 A.2d 959 (April 25, 1997); *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (Jan 28, 1997); *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037 (Oct. 30, 1996); *Commonwealth v. Beasley*, 544 Pa. 554, 678 A.2d 773 (June 18, 1996); *Commonwealth v. Yarris*, 543 Pa. 309, 671 A.2d 218 (Dec. 29, 1995); *Commonwealth v. Wharton*, 542 Pa. 83, 665 A.2d 458 (Sept. 29, 1995); *Commonwealth v. Crawley*, 541 Pa. 408, 663 A.2d 676 (August 22, 1995); *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (June 23, 1995); *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771 (May 16, 1995); *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (April 5, 1995); *Commonwealth v. Baker*, 540 Pa. 131, 656 A.2d 116 (May 8, 1995). Thus, recent history demonstrates that since the artificial impediments to expeditious collateral review which previously existed have been removed, the PCRA courts and this Court have been able to resolve and should continue to be able to resolve these petitions in an appropriately expedient manner once a capital defendant's direct appeals are exhausted. Consequently, it is now manifest that the undue delays in capital cases were caused not by the bifurcation of the collateral appeal process from the direct appeal process, but instead by the ability of capital defendants to postpone indefinitely the collateral appeal process once their direct appeals were resolved.

review in capital cases—will be achieved by the aforementioned 1995 amendments to the PCRA.

Justices ZAPPALA and NIGRO concur in the result.