

Villanova University School of Law
Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2007

# Grundy v. Comm PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3798

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Grundy v. Comm PA" (2007). *2007 Decisions.* Paper 377.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/377

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3798

GEORGE GRUNDY

v.

COMMONWEALTH OF PENNSYLVANIA;
THE DISTRICT ATTORNEY OF THE COUNTY OF MONTGOMERY;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
JOSEPH W. CHESNEY

George W. Grundy,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-00010
(Honorable Timothy J. Savage)

Argued April 24, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and ALARCÓN[*], *Circuit Judges*.

(Filed: September 26, 2007)

SONDRA R. RODRIGUES, ESQUIRE (ARGUED)
Two Penn Center Plaza, Suite 200
Philadelphia, Pennsylvania 19102
        Attorney for Appellant

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

MARY M. KILLINGER, ESQUIRE (ARGUED)
Office of District Attorney
Montgomery County Courthouse
P.O. Box 311
Norristown, Pennsylvania 19404
        Attorney for Appellees

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Petitioner George W. Grundy appeals the District Court's dismissal and denial of the claims in his habeas corpus petition. We will affirm.

## I.

Grundy shot and killed James Ford during a July 1, 1997, confrontation in the parking lot of Grundy's apartment complex in Upper Moreland Township, Pennsylvania. On January 17, 1998, Grundy was convicted of voluntary manslaughter and aggravated assault following a jury trial in the Montgomery County Court of Common Pleas. He was sentenced to a term of five-to-ten years' imprisonment. Grundy filed a motion for a new trial on March 20, 1998, and a supplemental motion for a new trial on May 19, 1998. Both motions were denied on July 1, 1998, but the trial court thereafter vacated its order and allowed Grundy's appointed appellate counsel (trial counsel was allowed to withdraw) to file supplemental post-trial motions. The court instructed Grundy to "'include any and all allegations that may be raised pursuant to the Post Conviction Relief Act'" (PCRA) in those motions. *Grundy v. Chesney*, No. 03-0010, at 2 (June 17, 2003)

2

(Magistrate Judge's Report & Recommendation). Evidentiary hearings were held on April 30 and June 29, 1999. On October 21, 1999, the trial court dismissed all of Grundy's supplemental post-trial motions, including his request for a new trial. Grundy timely appealed to Pennsylvania Superior Court, contending trial counsel had been ineffective and the trial court had made evidentiary errors. The Pennsylvania Superior Court affirmed his judgment of sentence on September 20, 2000. The Pennsylvania Supreme Court denied allocatur on August 22, 2002.[1] Grundy has been released from prison, and his parole ended by its scheduled date of July 8, 2007.

## II.

Grundy filed a habeas corpus petition in federal court on January 2, 2003, contending: (1) the prosecution failed to disclose evidence favorable to him; (2) his conviction was based on evidence obtained pursuant to an illegal arrest; (3) he was denied his right to appeal; and (4) counsel was ineffective. In her June 17, 2003, Report and Recommendation, the Magistrate Judge found that all but one of Grundy's claims had

---

[1] Grundy had initially sought leave to proceed pro se and file a petition for allowance of appeal nunc pro tunc in the Pennsylvania Supreme Court shortly after the Superior Court's decision was rendered. (He had also tried on several occasions to remove appellate counsel before the Superior Court.) The Pennsylvania Supreme Court granted leave on February 20, 2001, and a petition was filed on March 2, 2001. The Pennsylvania Supreme Court granted allocatur and remanded the case on July 30, 2001, for an evidentiary hearing to determine whether Grundy's waiver of his right to counsel was knowing, intelligent, and voluntary. After a hearing in September 2001, the trial court issued an order allowing Grundy to proceed pro se on May 10, 2002. The Pennsylvania Supreme Court issued an order allowing Grundy to proceed pro se four days later, but did not set a briefing schedule. Grundy filed no brief before the Pennsylvania Supreme Court denied allocatur in August 2002.

been raised for the first time in federal court, so that his habeas petition was a "mixed" one of exhausted and unexhausted claims. The Magistrate Judge found that further direct or collateral state court review of Grundy's unexhausted claims was unavailable, either because those claims had not been litigated (and had thus been waived) or because they raised issues not cognizable under the PCRA. She found Grundy's unexhausted claims were procedurally defaulted for purposes of federal review, and refused to excuse the procedural default, because Grundy had failed to show (1) an objective external cause for his failure to raise the claims in state court or (2) that any new exculpatory evidence sufficient to show a miscarriage of justice would result from the claims' being procedurally defaulted. Finally, the Magistrate Judge found the state courts' rejection of the one exhausted claim in Grundy's petition (that trial counsel had been ineffective for failing to call Grundy's wife as a witness) had not been contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The District Court adopted the Magistrate Judge's Report and Recommendation on September 15, 2004, and dismissed Grundy's petition. Grundy timely appeals.

On October 28, 2005, this Court granted a certificate of appealability with regard to the question whether the District Court should have dismissed Grundy's petition as mixed or instead stayed it and held it in abeyance pending exhaustion. We also instructed the parties to address whether Grundy could have filed a timely PCRA petition during the time his habeas petition was pending, whether he was time-barred from filing a PCRA petition and, if so, whether exhaustion should have been excused in the District Court.

4

## III.

### A.

The District Court had jurisdiction under 28 U.S.C. § 2254, and its order denying and dismissing Grundy's habeas petition is a final decision for purposes of 28 U.S.C. § 1291. This appeal was authorized by our certificate of appealability. *See id.* § 2253(c).

We exercise plenary review over a district court's denial of habeas relief. *Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir. 2005). Our review of a district court's dismissal of a habeas petition is plenary as to the court's determinations regarding exhaustion and procedural default. *Holloway v. Horn*, 355 F.3d 707, 713 (3d Cir. 2004). We review a district court's decision to dismiss a mixed habeas petition rather than to stay it and hold it in abeyance for abuse of discretion. *Ellison v. Rogers*, 484 F.3d 658, 660 (3d Cir. 2007).

### B.

"[A] habeas petitioner is required to exhaust available state remedies before requesting habeas relief in federal court." *McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987). But Grundy contends the District Court should not have dismissed his mixed habeas petition because of his failure to exhaust his claims in state court. Rather, he contends the court should have stayed the petition and allowed him to exhaust those claims in state court, in accordance with the Supreme Court's decision in *Rhines v. Weber*, 544 U.S. 269 (2005). We disagree.

In *Rhines*, the Court held that it is within a district court's discretion to stay a mixed habeas petition and hold it in abeyance while the petitioner exhausts his claims. But it cautioned that "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the purposes of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA): reducing delays in the execution of sentences, encouraging petitioners to seek collateral state court relief in the first instance, and giving petitioners an incentive to exhaust all their claims in state court prior to filing their federal petition. *Id.* at 277. For these reasons, the Court held that district courts may only employ the stay-and-abeyance procedure where: (1) good cause exists for the petitioner's failure to exhaust his claims; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in dilatory or abusive litigation tactics. *Id.* at 277–78. "On the other hand it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if" a petitioner satisfied all three requirements. *Id.* at 278.

Grundy contends he satisfies *Rhines*'s good cause requirement because the trial court's order that supplemental post-trial motions include all PCRA claims had the effect of subjecting Grundy to unconstitutional unitary review, denial of his right to direct review, and constructive denial of his right to counsel (because appointed appellate counsel failed to object to the procedural error).[2] Again, we disagree.

---

[2] To the extent Grundy contends the trial court's order constituted and led to errors in his PCRA proceeding itself, we will not consider his argument. "[H]abeas proceedings are not the appropriate forum for [the petitioner] to pursue claims of error at the PCRA

(continued...)

6

Grundy relies on the fact that in August 1997 the Pennsylvania Supreme Court

suspended the state's Capital Unitary Review Act (CURA). *See In re Suspension of the*

*CURA*, 722 A.2d 676 (Pa. 1999) (denying motion for reconsideration). Among other

things, the CURA had instituted "a bifurcated, but simultaneous, post-trial review process

at the trial court level for both post-sentence motions and collateral appeal." *Id.* at 677.

The Pennsylvania Supreme Court found this aspect of the CURA was inconsistent with

three of its pre-existing procedural rules governing capital cases, and thus violated the

Pennsylvania constitution. *Id.* at 680. But the court's holding was directed to capital

cases, not non-capital cases. Indeed, Justice Castille (the author of *In re Suspension of the*

*CURA*) specifically contemplated the possibility of unitary post-sentence review in non-

capital cases in a later concurring opinion. *See Commonwealth v. O'Berg*, 880 A.2d 597,

605 (Pa. 2005) (Castille, J., concurring).

The trial court's July 10, 1998, order is not inconsistent with the Pennsylvania

Supreme Court's decision in *In re Suspension of the CURA*, and does not constitute good

cause for Grundy's failure to exhaust his state law claims. The District Court did not

abuse its discretion in dismissing Grundy's mixed habeas petition rather than staying it

and holding it in abeyance.

---

(...continued)
proceeding." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.").

7

C.

The District Court found that further direct or collateral state court review of Grundy's unexhausted claims was foreclosed and that the claims were thus procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."). Because Grundy's parole ended on July 8, 2007, his claims are no longer cognizable under the PCRA, and we agree that further direct or collateral state court review of his claims is thus foreclosed. *See O'Berg*, 880 A.2d at 599 ("[U]nder the plain language of the . . . PCRA[], an appellant is only eligible for post-conviction relief if he is 'currently serving a sentence of imprisonment, probation or parole for the crime.'") (quoting 42 Pa. Cons. Stat. § 9543(1)). Procedural default may be excused upon a showing of cause and prejudice. *Slutzker v. Johnson*, 393 F.3d 373, 385–86 (3d Cir. 2004). But the only cause asserted by Grundy is the supposed unconstitutionality of the unitary review to which he was subjected, an argument we have already rejected.

D.

Grundy contends the District Court erred in denying on the merits his claim that trial counsel was ineffective for failing to call his wife as a witness.

8

Under AEDPA, a state prisoner's habeas petition must be denied as to any claim that was "adjudicated on the merits in State court proceedings" unless the adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Under the "unreasonable application" prong of § 2254(d)(1), "[a] federal habeas court may not issue the writ simply because it concludes in its independent judgment that the state court applied clearly established law incorrectly." *Albrecht v. Horn*, 485 F.3d 103, 116 (3d Cir. 2007). "Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

To prevail on his ineffective assistance of counsel claim, federal law requires that Grundy must show both (1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–95 (1984). The trial court found Grundy's wife was unable to offer exculpatory evidence or support his claim of self-defense. It stated that, under Pennsylvania law, Grundy was required to show that "the absence of testimony prejudiced" him,[3] *Commonwealth v. Grundy*, No.

---

[3] The court cited *Commonwealth v. Gonzalez*, 608 A.2d 528, 532 (Pa. Super. 1992), which states that, in order "to succeed on a claim of ineffectiveness for failure to call a witness, it must be shown that: (1) the witness existed; (2) the witness was available; (3)

(continued...)

9

4261-97, at 14 (Ct. Com. Pl. Montgomery Cty. Jan. 28, 2000), and accordingly denied the ineffectiveness claim. This was consistent with *Strickland*'s prejudice requirement, and we agree with the District Court that, under the AEDPA standard of review, Grundy's lone exhausted ineffective assistance of counsel claim should be denied on the merits.

## IV.

We will affirm.

---

[3](...continued)
counsel was informed of the existence of the witness or should otherwise have known of him/her; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of the testimony prejudiced appellant so as to deny him a fair trial."