J-S28026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS ALLEN WILTON | : | |
| | : | |
| Appellant | : | No. 217 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 15, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001114-2020

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: DECEMBER 30, 2022**

Thomas Allen Wilton appeals from the judgment of sentence[1] imposed following his convictions for sexual assault, indecent assault by forcible compulsion, indecent assault without consent, and indecent exposure.[2] Wilton challenges the weight and sufficiency of the evidence and argues the court abused its discretion in its rulings regarding the admission of evidence and instructions for the jury. We affirm.

At Wilton's jury trial, the victim, M.Y., testified that she and Wilton met using a dating application. Trial Court Opinion, filed 8/29/22, at 3. After

_____

[1] Wilton's notice of appeal erroneously states he appeals from his conviction, judgment of sentence, and order denying his post-sentence motion. We have amended the caption to reflect that the appeal lies from the judgment of sentence. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*).

[2] *See* 18 Pa.C.S.A. §§ 3124.1, 3126(a)(2) and (a)(1), and 3127(a), respectively.

exchanging a series of messages, they agreed to meet at a restaurant. *Id.* They were there for approximately two hours and sat at the bar. *Id.* at 4. The victim showed Wilton a picture of her bare breasts, and the two touched each other's thighs and kissed. *Id.* They left the restaurant and went into the victim's SUV. Wilton suggested they go to a hotel, and the victim declined. N.T., 8/30/21-9/2/21 (Trial), at 45-46.

According to the victim, the two were conversing in her car when Wilton unbuckled his pants, exposed his penis, and asked the victim if she wanted to touch it. Trial Ct. Op. at 5. The victim responded that "it was not the time or place." N.T. at 48. Wilton then "took her right hand and put it on . . . his penis." *Id.* The victim testified she "pulled away and again indicated that it was not the time or the place." *Id.*; *see also id.* at 77.

The victim said that Wilton then groped her chest. She stated, "At that point he reached across me and was using his hands and was groping my chest very hard, very rough. It hurt. I asked him to stop. I said it was not the time or the place, but he continued." *Id.* at 48. The victim stated that Wilton then pulled her head onto his penis:

> And then he did stop and that's when he reached across and pulled me down on him. And when he pulled me down my mouth made contact with his penis. And I pulled away and I said that it was not the time or the place and that I wanted him to leave. And eventually I pulled myself up against the driver's side door and I told him he needed to go, that I didn't feel safe or comfortable.

*Id.* at 48-49.

- 2 -

The victim said that when Wilton pulled her head into his groin area, the tip of his erect penis had entered her mouth. *Id.* at 49-50. She testified that after she asked him to leave, Wilton got out of her car and apologized. *Id.* at 49. The prosecutor asked the victim if she felt that at any time she had given consent or indicated that she wanted to engage in the behavior, and she responded that Wilton's actions did not allow her to have a choice. When asked what she meant, she said, "Because he grabbed my hand. He grabbed my body. He grabbed my head and forced it onto him." *Id.* at 65.

The victim testified that she sent a text message to a former paramour later that night, telling him that she had been out to an "impromptu" dinner with a friend and had been assaulted. Trial Ct. Op. at 8 (citing N.T. at 63, 86). The victim testified that she did not tell her former paramour the truth about the incident because she did not want him to know she had been on a date. N.T. at 63.

The Commonwealth asked the victim to confirm whether she had been charged with welfare fraud in 2014. *Id.* at 33. After the victim responded in the affirmative, the Commonwealth asked, "What was your family situation like at that point in time?" *Id.* at 34. Wilton objected. The court overruled the objection, stating "I think that's proper, but beyond that I think we'll stick with a tight line, okay." *Id.* The victim then testified, "At that time my husband had been convicted of molesting our daughter. I was also recuperating from a serious back injury at work, and I was also putting my daughter into a boarding school." *Id.* The Commonwealth asked if she had received extra

- 3 -

welfare benefits, and the victim agreed. *Id.* at 35. The Commonwealth also asked whether the victim "[paid] that all back," to which the victim responded, "In full." *Id.* The Commonwealth then reiterated that the victim has "a conviction for the fraud that was committed." *Id.*

On cross-examination, defense counsel asked whether the victim had pleaded guilty to two counts of fraudulently obtaining food stamps or assistance, to which she agreed. *Id.* at 131. Defense counsel then attempted to introduce a document showing that the victim's husband had been convicted a year before the victim had pleaded guilty to fraud, and the Commonwealth objected. *Id.* at 132-33. The court noted the Commonwealth had "opened [the] door" to the background of the victim's *crimen falsi* conviction, and the Commonwealth ultimately stipulated to the date of the victim's husband's conviction. *Id.* 133, 135, 193-96.

A friend of the victim testified that the victim called her and told her about the incident shortly after it happened. The victim told her that Wilton had tried to put her hand on his penis and had grabbed her breasts aggressively, but the victim's friend could not recall whether the victim had said Wilton had also pulled her head into his lap. Trial Ct. Op. at 5 (citing N.T. at 90, 93-94).

The victim went to the police station approximately two hours after the incident and gave a written and an oral statement, which were published to the jury. *Id.* at 6; N.T. at 103-05, 112. An officer testified that the victim's

left breast had appeared bruised, and there was redness and petechia from trauma or pressure. ***Id.***; ***see also*** N.T. at 179-80.

Before the Commonwealth introduced the surveillance video from the restaurant, the Commonwealth raised that defense counsel had indicated he would be seeking a jury instruction based on the Commonwealth's failure to produce the entire video. N.T. at 203. The court said it would reserve its ruling on whether it would give the instruction. ***Id.*** at 205.

A detective testified that he spoke to the victim a week after the incident, at which time she disclosed that she had shown Wilton photographs of her breasts, which she had not included in her previous statements to the police. ***Id.*** at 6-7; ***see also*** N.T. at 83, 238-39, 246. Two days after his conversation with the victim, the detective went to the restaurant to retrieve the video surveillance footage from the night of the incident. The detective recorded, and showed the jury, portions of the video showing Wilton and the victim arriving, when they each went to the restroom, when they were kissing, and when they left. ***Id.*** at 7-8 (citing N.T. at 233-36).

The detective testified that he had been unable to make a copy of the video, so he watched the footage, on fast-forward, and recorded the portions of the video that he thought were important using another camera. Trial Ct. Op. at 7; N.T. at 231-33. He also stated that while an unrecorded portion of the video showed the victim looking at her phone, he had not been able to see what was on the victim's phone screen. ***Id.*** at 8; N.T. at 236, 246, 250.

Wilton's version of the event differed from the victim's. He testified that while he and the victim were in the restaurant, the conversation became sexual in nature, and the victim voluntarily showed him photographs of herself, including one of her shaved vulva, and that she also had photographs of erect penises in a locked application on her phone. Trial Ct. Op. at 8-9 (citing N.T. at 300-01). He testified that the victim told him she was into "BDS & M," and showed him a picture of her breast tied in a red climbing rope. *Id.* at 9; N.T. 302-03. Wilton stated he asked the victim "if she gave oral intercourse, and she responded that she did and volunteered that she swallowed." Trial Ct. Op. at 9 (citing N.T. at 303). Wilton put his hands on the bar and asked the victim "if you're serious[,] press your breast against my hands," and according to Wilton, the victim did so. N.T. at 304.

According to Wilton, when they were in the victim's car, they kissed and the victim initiated fellatio. Trial Ct. Op. at 9 (citing N.T. at 308-09). When Wilton shifted his position and "lifted up a little bit," the victim's "personality changed drastically" and she mentioned that her daughter had been raped. N.T. at 311-12. Wilton testified that the victim then asked him to leave, and he did. Wilton later texted the victim that he had returned home safely, and "sorry for the bummer ending." *Id.* at 313.

At a side-bar conference, Wilton requested the court remove the victim from the courtroom because she was crying:

> [Defense counsel]: It's just that during her cross of my client I can hear the victim in the background sobbing. I know it's emotional for her, but I also look to the juror members who look

back at her at the same time as she was cross-examining him. I'm wondering if it would be okay if she would step outside. I just – I don't want my client's testimony to be drowned out by sobs of the victim.

*Id.* at 343. The court denied the request, because it did not find the victim to be disruptive to the proceeding:

First of all, it's a public courtroom. I don't think I have the authority to make her step out unless she was actually disruptive. Now, whether the jury sees her sobbing, that may help or hurt her case, I don't know. I mean, it's all how the jury views this.

I've notice[d] that she was sobbing and I certainly can't hear it here, but I don't think I have the authority at this point to ask her to step out. . . .

If it continues or if I'm alerted, if it starts becoming audible to me then maybe I will take a step at that point if you have any concern. . . .

But I just, -- I'm not inclined to send someone back to talk to her after coming to sidebar because that simply accentuates whatever you are asking . . . to emphasize. I'll make a note of it, but I don't think I can do anything about it at this point. . .

I'll say this. That I noticed her sobbing, but I didn't hear her sobbing and I didn't see it interfering with what's going on at this point. Now, if that changes . . . I'll be more alert to it going forward, but I don't think there's anything I can do at this juncture. . . .

It might have been in your head too, but I'll watch more closely.

*Id.* at 343-45.

On cross-examination, the Commonwealth asked Wilton why he had not asked the Commonwealth to produce the alleged photograph of the victim's vulva during discovery, when he had requested the photographs of the victim's breasts. N.T. 324-25. The prosecutor stated, "This picture of a shaved

genital, I mean, this is the first time we're ever hearing about this picture." *Id.* at 325. Wilton objected. *Id.* The court sustained the objection, stating that "you're coming awful close to stepping over the right to silence[.]" *Id.* at 333.

Prior to the close of evidence, when discussing the proposed jury instructions, defense counsel abandoned his request for a jury instruction related to the missing portions of the surveillance video. Counsel stated, "Just so we're clear, I don't think there's an issue with regard to my request for the missing evidence instruction. I don't think I get that, I understand, and that's something that . . . I kind of hoped for it." *Id.* at 333-34. The court responded it "[did not] think there's an adverse inference . . . to be drawn from not having 20/20 hindsight in advance." *Id.* at 334. Defense counsel stated, "No, I agree. . . . And I don't – I know this detective and I would never have thought he would do something deliberate like that. . . . So the instructions, we are not going to proceed with the adverse inference." *Id.* at 334.

Following closing arguments, the jury charge, and deliberations, the jury convicted Wilton of the above charges. The court sentenced him to an aggregate of two and one-half to five years' incarceration and five years' consecutive probation. Wilton filed a timely post-sentence motion, which the court denied. Wilton appealed.

Wilton raises the following issues:

A. Whether the trial court erred in accepting the jury verdict where the evidence presented at trial was insufficient to prove [Wilton] acted without consent or by force?

B. Whether the trial court abused its discretion in accepting the jury verdict, contrary to the weight of the evidence, which established a consensual sexual encounter?

C. Whether the trial court abused its discretion in allowing the Commonwealth to introduce a factual basis for Complainant's prior crimen falsi conviction?

D. Whether the trial court erred and abused its discretion in failing to give a missing evidence jury instruction?

E. Whether the trial court erred in allowing Complainant to audibly and visibly sob during [Wilton's] testimony?

F. Whether the trial court erred in failing to give a curative instruction where the Commonwealth asked a line of questions shifting the burden of proof to [Wilton]?

Wilton's Br. at 5-6 (suggested answers omitted).

## I. Sufficiency of the Evidence

Wilton argues the evidence was insufficient to establish that the encounter was forceful or nonconsensual, and therefore insufficient to prove sexual assault, indecent assault by forcible compulsion, or indecent assault without consent. He claims that although the victim testified that he put her hand on his penis, the victim never testified that he "held her hand, refused to let her move his hand, or used any type of force to move her hand." Wilton's Br. at 20. He argues that although the victim testified that he "grabbed" her breasts, she testified that he stopped when she told him to. *Id.* at 21. He contends that although the victim testified that he pulled her head onto his penis, she also testified that she then sat back up, and did not state that Wilton "hurt her, grabbed her with force or held her head down." *Id.* at 19. Wilton further argues that the victim testified that she responded to his

advances by saying "it was not the time or place," rather than "no," or "stop," except for when he grabbed her breasts, which he then stopped doing. ***Id.*** He also left the vehicle as soon as the victim asked him to. ***Id.*** Wilton argues the victim "never honked the horn, screamed, or exited the vehicle." ***Id.*** at 25.

Finally, Wilton argues the Commonwealth failed to present sufficient evidence to prove indecent exposure because the victim admitted that she had shown him pictures of her naked breasts. ***Id.*** at 22. He therefore contends his showing his penis to the victim in her car was not likely to offend, affront, or alarm her. ***Id.*** at 22-23.[3]

"When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Clemens***, 242 A.3d 659, 664–65 (Pa.Super. 2020) (internal quotation marks and citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** at 665 (citation omitted). The sufficiency of the evidence is a question of law. ***Commonwealth v. Widmer***, 744 A.2d 745,

---

[3] Wilton also points to his testimony that the victim showed him nude photos, spoke to him explicitly about sex, and that the two were consensually kissing in the car and Victim voluntarily began oral sex. Wilton's Br. at 21-22. This goes to the weight, and not the sufficiency, of the evidence. ***See Commonwealth v. Lopez***, 57 A.3d 74, 80 (Pa.Super. 2012).

- 10 -

751 (Pa. 2000). Our standard of review is *de novo*, and our scope of review is plenary. ***See Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa.Super. 2018).

To prove sexual assault and indecent assault without consent, the Commonwealth must establish that the defendant had certain contact with the victim without the victim's consent. ***See*** 18 Pa.C.S.A. §§ 3124.1, 3126(a)(1).[4] To prove indecent assault by forcible compulsion, the Commonwealth must prove the defendant committed specified conduct "by forcible compulsion." 18

---

[4] The relevant statutory provisions are as follows:

**§ 3124.1. Sexual Assault**

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1. "Sexual intercourse" is defined as, "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101.

**§ 3126. Indecent Assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1). "Indecent contact" is defined as, "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Pa.C.S.A. § 3126(a)(2).[5] "Forcible compulsion" is "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101.

Here, according to the victim's testimony, once Wilton exposed his penis to her and asked if she wanted to touch it, she responded that "it was not the time or place." N.T. at 48. In spite of her answer, she said Wilton "grabbed" her hand and physically placed it on his penis. She also said that he grabbed her head and forced it down onto his penis. This testimony satisfied the forcible compulsion element of indecent assault. **See** 18 Pa.C.S.A. § 3126(a)(2).

The evidence was likewise sufficient to prove lack of consent. After Wilton put her hand on his penis, the victim pulled her hand back and repeated that "it was not the time or the place." N.T. at 48. Wilton proceeded to grope her chest until sometime after she told him to stop. **See** N.T at 48 ("I said it was not the time or the place, but he continued"). This was enough to establish

---

[5] That statute states:

**§ 3126. Indecent Assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: . . .

(2) the person does so by forcible compulsion[.]

18 Pa.C.S.A. § 3126(a)(2).

that Wilton touched the victim's breasts without her consent, thereby committing indecent assault without consent. **See** 18 Pa.C.S.A. § 3126(a)(1).

Despite the victim's refusal to touch Wilton's penis or allow him to touch her breasts, Wilton then pulled the victim's head so far down into his lap that his erect penis entered her mouth. **Id.** at 48-50, 77. The evidence was sufficient to establish that Wilton did not have the victim's consent to have oral intercourse, thereby committing sexual assault. **See** 18 Pa.C.S.A. § 3124.1.

We easily reject Wilton's argument that these statutes require evidence that the defendant "held down," "refused to let go," or used enough force to hurt the victim. "Forcible compulsion" occurs when the defendant uses any level of force, express or implied. Nor do the statutes require evidence that the victim screamed or retreated in order to prove lack of consent. We further find no merit to Wilton's argument that the victim's warning to him that "it was not the time or place," as opposed to saying, "no" or "stop," equated to an expression of consent. Her statement made it plain that she did not want to engage in sexual activity there and then. Moreover, a mistake of fact about the victim's consent is not a defense to a sexual offense. **Commonwealth v. Farmer**, 758 A.2d 173, 178 (Pa.Super. 2000).

Finally, the evidence supports Wilton's conviction for indecent exposure. That charge required the Commonwealth to prove that Wilton "expose[d] his . . . genitals in any public place or in any place where there are present other persons under circumstances in which he . . . [knew] or should [have known]

that this conduct [was] likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127(a).

The victim testified that she had met Wilton for the first time earlier that evening, had kissed him, and had declined his invitation to go to a hotel. Later, when she and Wilton were speaking in her car, Wilton exposed his penis to her. It was for the jury to determine whether, under the circumstances, Wilton should have known that exposing his penis was likely to offend, affront, or alarm the victim. The evidence here does not fail as a matter of law.

## II. Weight of the Evidence

Wilton argues that the verdicts are against the weight of the evidence. He points to the victim's testimony that she had shown him naked pictures of her breasts and that the two had consensually kissed, and his own testimony that the victim had shown him pictures of her genitalia and erect penises and discussed her willingness to engage in oral sex. Wilton also questions whether a person must "expressly ask permission before he can make a move," and argues that "after an evening filled with sexual innuendos," it is more reasonable to conclude that continued sexual activity is permissible until one party says, "no," which the victim did not do. Wilton's Br. at 28-29.

It is the purview of the jury as fact-finder to weigh the evidence and determine the credibility of the witnesses. *Clemens*, 242 A.3d at 667. A trial court may therefore grant a new trial based on the weight of the evidence "only if the verdict is so contrary to the evidence as so shock one's sense of justice." *Id.* (quotation marks and citation omitted). In turn, we review the

trial court's ruling for whether "it is apparent there was an abuse of discretion." *Widmer*, 744 A.2d at 753. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration" to the court's ruling on a weight claim. *Id.*

Here, the court found the jury credited the victim's testimony and the resulting guilty verdicts were not so contrary to the evidence as to shock one's sense of justice. *See* Trial Ct. Op. at 14. We discern no abuse of discretion.

The statutory language does not require the Commonwealth to prove a defendant did not explicitly request permission for any given sexual contact, only that the victim did not consent to the sexual contact. The jury credited the victim's testimony that she did not consent to making physical contact with Wilton when they were conversing in her vehicle, but that Wilton made such contact anyway. The victim even outwardly manifested her lack of consent by repeatedly telling Wilton it was "not the time or place" and "stop," and by removing her hand from Wilton's penis. The only evidence Wilton presented to the contrary was his own, self-serving testimony. The court therefore acted within its discretion in denying Wilton's claim that the verdicts were against the weight of the evidence presented at trial.

### III. *Crimen Falsi* Evidence

Wilton argues that while *crimen falsi* convictions are admissible to impeach a witness's testimony, the facts underlying the convictions are inadmissible. He argues that after the Commonwealth preemptively introduced evidence of the victim's conviction for Welfare Fraud, a *crimen falsi*

crime, the prosecutor impermissibly asked the victim what her "family situation [was] like at that point in time?" Wilton's Br. at 31 (quoting N.T. at 62). He contends the court abused its discretion in overruling his objection to this question. Wilton further argues the prosecutor brought up the victim's response during closing argument. *Id.* at 31-32.

Pursuant to Rule 609 of the Pennsylvania Rules of Evidence, a witness may be impeached with evidence that she has been convicted of a crime involving dishonesty or a false statement, *i.e.*, a *crimen falsi* crime, if the conviction or release from confinement occurred within the last ten years. *See* Pa.R.E. 609(a)-(b). The witness may be impeached using only "the name, time, and place of the crime and the punishment received." *Commonwealth v. Creary*, 201 A.3d 749, 754 (Pa.Super. 2018) (quoting *Commonwealth v. Oglesby*, 418 A.2d 561, 564 (Pa.Super. 1980)). "We have applied this limitation . . . to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses." *Id.* (internal quotation marks and citations omitted).

In *Creary*, we were tasked to decide whether the facts of the crime could be used to rehabilitate the witness. *Id.* In that case, the trial court had allowed an impeached witness, on redirect examination, to explain his conviction for theft of services had "resulted from his use of his transpass to get both him and another individual onto a bus." *Id.*

We concluded that whether "a party may rehabilitate a witness with the facts underlying a *crimen falsi* conviction that was used to impeach the

witness" is left to the discretion of the trial court. *Id.* at 756. We noted that the Rules of Evidence already provide that a trial court must not admit evidence when its probative value "is outweighed by a danger of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence,'" and that caselaw has established that a trial judge must ensure technically relevant evidence does not "[distract] the attention of the jury from the primary to collateral issues." *Id.* (quoting Pa.R.E. 403 and *Geesey v. Albee Pa. Homes, Inc.*, 235 A.2d 176, 180 (Pa.Super. 1967)).

Here, the trial court allowed the victim to explain that when she was convicted for welfare fraud, her "husband had been convicted of molesting [her] daughter. [She] was also recuperating from a serious back injury at work, and [she] was also putting [her] daughter into a boarding school." N.T. at 34. The court further allowed the victim to tell the jury she had paid full restitution for her offenses. *Id.* at 35.[6]

The trial court did not abuse its discretion in allowing this testimony. It was limited to a few simple lines, was relevant to the issue of the victim's credibility, and was not so distracting as to risk diverting the jury's attention from the operative facts of the case. Furthermore, once the Commonwealth "opened the door" to this issue, the court permitted Wilton to cross-examine

---

[6] Although the Commonwealth asked the victim these questions on direct examination, rather than on re-direct examination following impeachment, Wilton did not object to, and does not argue regarding, the order in which the evidence on this point was presented.

the victim, and argue to the jury, regarding the fact that the victim was convicted for welfare fraud "well after" her husband had been convicted of molesting her daughter. **See** N.T., 8/30/21-9/2/21 (Voir Dire, Opening Statements, & Closing Arguments), at 72. In addition, Wilton waived his objection to the prosecutor's closing argument by failing to object at that time. We conclude no relief is due.

### IV. Missing Evidence Instruction

Wilton argues the court abused its discretion in denying his request to instruct the jury that when the Commonwealth fails to present material evidence that was available only to it, and does not satisfactorily explain its failure to produce the evidence, the jury may infer that the missing evidence would have been unfavorable to the Commonwealth. Wilton's Br. at 35-36 (citing Pa. SSJI (Crim), § 3.21B). Wilton argues that the missing video footage of him and the victim at the bar would have corroborated his testimony that she leaned her breast against his hand in response to his question about oral sex, and that they had looked at sexual photographs on the victim's phone. **Id.** at 37. Although Wilton acknowledges that defense counsel "appeared to have walked back his request" when the trial court determined the request for the instruction was "invalid," he argues it was nevertheless court's duty to consider in the first instance whether the charge was warranted. **Id.** at 36.

An objection to the jury charge must be properly preserved. **See** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto

before the jury retires to deliberate"). Duly raising the issue before the trial court both alerts the court to the party's position and allows the court to remediate any potential error. **Commonwealth v. Pressley**, 887 A.2d 220, 224 (Pa. 2005). Therefore, where the court denies a party's proposed jury instructions, and the party fails to object or take exception to the charge actually given, after the court charges the jury, the issue is waived. **Commonwealth v. Hitcho**, 123 A.3d 731, 756 (Pa. 2015); **see also Commonwealth v. Gwynn**, 723 A.2d 143, 152 (Pa. 1998) ("A defendant's failure to challenge the jury charge before the jury retires to deliberate prevents appellate review).

Here, defense counsel proposed the court give a jury instruction relating to the missing surveillance video. However, he later acknowledged, "I don't think I get that," and stated that "we are not going to proceed" with pursuing the instruction. N.T. (Trial) at 333-34. Furthermore, Wilton did not make any objections related to the charge the court gave prior to the jury's deliberations. Thus, the issue is waived. **Hitcho**, 123 A.3d at 756.

### V. Crying in the Courtroom

Wilton argues the court abused its discretion in denying his request to have the victim removed from the courtroom during his testimony. He argues she was audibly sobbing to such an extent that his counsel was distracted by the noise. He maintains jurors were also watching the victim. Wilton argues the failure to remove the victim denied him a fair trial. He contrasts this situation with the facts of **Commonwealth v. Duffey**, 548 A.2d 1178 (Pa.

- 19 -

1988), in which the mother of a victim screamed and wept during testimony, and the court then questioned the jurors and instructed them on the outbursts. He also points us to *Commonwealth v. Marshall*, 568 A.2d 590 (Pa. 1989), in which the court gave a curative instruction following the victim's emotional outburst.

"The trial court has discretion to determine whether a party was prejudiced by a spectator's conduct." *Commonwealth v. Sanchez*, 36 A.3d 24, 47 (Pa. 2011). A spectator should be removed when "the unavoidable effect of the incident is to deny the defendant a fair trial." *Id.*

Here, the trial court found that the victim's conduct was neither disruptive nor prejudicial. Trial Ct. Op. at 20. According to the court's remarks on the record, it could not hear the victim crying and "didn't see it interfering with what's going on at this point." N.T. at 344. The court opted not to remove the victim so as not to draw further attention to her. *Id.*

The court was well-placed to gauge the level of disturbance, and we defer to its discretion in determining the victim's crying did not deprive Wilton of a fair trial. We further find Wilton's reliance on *Duffey* and *Marshall* misplaced, as those cases were decided with consideration of the curative instruction the court gave to the jury, and here, Wilton requested no such instruction, thereby waiving the issue. *See Sanchez*, 36 A.3d at 48 n.8 (finding appellant waived issue of whether court erred in refusing to read point of charge to jury regarding emotional outburst by family members).

## VI. The Burden of Proof

Wilton argues the court abused its discretion in overruling his objection to the prosecutor's asking him why he had not requested the alleged photograph of the victim's genitals when reviewing the discovery. Wilton argues that, as the defendant, he was not required to present any evidence to prove his innocence, and the Commonwealth's question both impermissibly shifted the burden of proof onto him and violated his constitutional right to remain silent. He further argues the court's error was not harmless. Wilton acknowledges that defense counsel failed to request a curative instruction or a mistrial, but argues that the court has the power to declare a mistrial where necessary and has an obligation to ensure a fair trial.

In his Concise Statement of Matters Complained of on Appeal, Wilton presented the issue as the trial court's failure to give a curative instruction. The trial court found this issue waived by Wilton's failure to request such an instruction.

We agree that the issue is waived. An objection to a prosecutor's alleged misconduct does not preserve an issue where the defendant fails to request a remedy, such as a mistrial or curative instruction. ***Commonwealth v. Sandusky***, 77 A.3d 663, 670 (Pa.Super. 2013). Moreover, Wilton's Concise Statement of Matters Complained of on Appeal focused only on the court's failure to give a curative instruction—which he did not request—and not the court's ruling on the underlying objection. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (any issue not included in the Statement of Matters is waived).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/2022